**In re the Marriage of Nancy GERARDY, Petitioner, Appellant,**

v.

**Mark GERARDY, Respondent.**

**No. C9–86–284.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Oct. 17, 1986.

Curtis L. Charlson, Thief River Falls, for Nancy Gerardy.

Roger C. Malm, Hallock, for Mark Gerardy.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court ordered joint legal and physical custody of the parties' five year old son. Nancy Gerardy appeals, arguing that she should have been awarded sole physical custody because she is the primary caretaker. We reverse.

## FACTS

The parties were married on July 15, 1979. One child, Brandon Michael Gerardy, was born during the marriage. At the time of the final judgment, Brandon was five years old, appellant Nancy Gerardy was twenty-six, and respondent Mark Gerardy was thirty years of age.

During the course of the marriage, both appellant and respondent worked outside the home. Since 1984 appellant has worked as a licensed practical nurse at a local clinic. Prior to that time, she was a receptionist at the clinic and worked for Northwestern Bell. For the past twelve years, respondent has been employed by a wholesale grocery distributor.

In May 1985 the parties separated, and in August appellant commenced dissolution proceedings. Marital property was divided by agreement, and the trial court resolved disputes about child care and support.

Testimony suggests that both parties were concerned and caring parents, each with a positive relationship with their son. Both claimed to have been involved in the raising of their child. Appellant testified, however, that she performed all of the nurturing duties prior to the parties' separation. Thus, appellant claimed that she was responsible for meal preparation, feeding, bathing, grooming, dressing, medical care, social interaction, and education of the child. Respondent claimed that he too was involved with nurturing duties on a daily basis, but, like several of his witnesses, he admitted that prior to separation appellant performed most of the caring duties of a parent.

The trial court found that both parties were capable of providing parental care and that prior to their separation, each played a role as a caretaker of the child. The trial court also found that when "this proceeding was commenced, the care of the child was equally shared by the parties." The court further found that appellant and respondent cooperated in raising Brandon, noting that Brandon has benefited from the contact he has had with both parents since they separated in May 1985. Finding that Brandon's interaction and relationship with each parent was "an important factor in the emotional stability of the child," the trial court also found that "it would not be in the child's interests and would be detrimental to the child if one parent were to have sole authority over the child's upbringing."

The trial court placed Brandon in the joint legal and physical custody of his parents. Under the court's plan, Brandon would reside with his mother from the first of September until Christmas vacation, with respondent to have visitation with him every other weekend and on overnight stays during the week. During the two week Christmas vacation, Brandon would spend one week with appellant and one week with respondent. From the commencement of school after Christmas break until May 15, the court's visitation schedule placed Brandon with his father, with alternating weekends and weekly overnight stays to be spent with appellant. During summer vacation, Brandon would alternately reside with appellant for two weeks and then with respondent for two weeks, with the provision that he would have one weekly overnight stay with the noncustodial parent for each two week period.

In its attached memorandum, the trial court discussed its custody decision in terms of the factors enumerated in Minn. Stat. § 518.17, subds. 1, 2 (1984). The trial court found that Brandon reacts well to both parties, that both parents have the capacity to provide love, affection, and guidance, and that appellant and respondent cooperated during the separation in an excellent manner. In addition, the trial court found that both parties are excellent parents, concluding that "a judicial declaration of preference of one parent over the other when such declaration is not essential is not in the best interests of the child."

The trial court also considered the effect of *Pikula v. Pikula,* 374 N.W.2d 705 (Minn.1985). The court observed that a father "cannot meet any of the [primary parent] criteria" for very young children and that in traditional families "the father may never have the opportunity to demonstrate that he can fulfill the criteria, even though he is willing and able." The court added that "the *Pikula* case is very appropriate" where one parent is uninvolved in child care "even though there is a need."

The trial court noted that in this case "the mother may have fulfilled more of the criteria than the father did during the marriage," but the father fulfilled them "some times" and never refused to do so after the couple separated. The court said there was no evidence the arrangements for divided care during separation had any adverse effects on the child.

Nancy Gerardy appeals from the judgment and decree entered in February 1986.

## ISSUE

In making its custody determination, did the trial court abuse its discretion by failing to adequately consider the role of the primary caretaker?

## ANALYSIS

Appellate review of a custody determination is "limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula,* 374 N.W.2d at 710. The trial court's findings must be sustained unless they are clearly erroneous. *Id.*

A determination of child custody must be based on the best interests of the child and must not prefer one parent over the other solely on the basis of the parent's sex. Minn.Stat. § 518.17, subd. 3 (1984). In evaluating the best interests of a child, a court must consider all relevant factors, including those enumerated in section 518.-17. *See id.* § 518.17, subd. 1. The factors set forth in section 518.17, subd. 1 require that when both parents seek custody of a child too young to express a preference and one parent has served as the primary caretaker, the trial court must award custody "to the primary parent absent a showing that that parent is unfit to be the custodian." *Pikula,* 374 N.W.2d at 713. The underlying rationale of the primary parent doctrine is that an intimate relationship between parent and child should not be disrupted without strong reasons that relate specifically to the parent's capacity to provide and care for the child. *Id.* at 711, 714; *see Berndt v. Berndt,* 292 N.W.2d 1, 2 (Minn.1980).

*Pikula* also addresses those cases in which child care has been equally shared by both parents. Thus, "[w]hen the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises * * *." *Pikula,* 374 N.W.2d at 714. Here respondent claims that both parties worked and shared equally in child rearing duties.

■ The trial court found that the parties shared equally in the care of Brandon at the time appellant commenced the dissolution proceeding. *Pikula* lists ten nurturing duties that must be considered, among others, when attempting to determine if one parent is the primary parent. *See id.* at 713. The testimony of respondent and his witnesses reveals that respondent took on more of these duties after the parties separated. Under *Pikula,* however, care-

taking functions must be evaluated for the period before separation. *Id.* at 714.

Appellant claims that she performed nearly all of the nurturing duties prior to the parties' separation. The court agreed that she "may have" met more of the *Pikula* "criteria" before the parties separated. Respondent's witnesses admitted that appellant performed many of the care and nurturing duties. For example, respondent's younger sister stated that appellant cooked the meals. Another of respondent's sisters admitted that appellant cooked the meals and bathed and took care of Brandon while he was an infant. Respondent admitted that appellant generally took Brandon to the doctor, cooked meals, took care of Brandon in the early hours of the morning, and purchased his clothing. In addition, the woman who ran the first day care center Brandon attended admitted that appellant contacted her regarding day care. Appellant testified that she toilet trained Brandon.

 This testimony reveals that appellant performed most of the nurturing functions enumerated in *Pikula*. While it is clear that respondent performed some of these ·duties during the marriage and played an assisting role with many of the tasks, there is insufficient evidence to support a finding that daily care was given primarily or equally by respondent before the parties separated. Under *Pikula*, appellant is the primary parent.

The error of the trial court was not so much in its findings of fact as in its application of the law. It is evident the court was reluctant to be governed by the *Pikula* decision. The court felt that fathers were disadvantaged by the primary parent preference. The court concluded tht it was "unable" to apply the case, even though the predominant evidence showed appellant was the primary parent and the court agreed she "may have" acted in this role.

 To support its view, the trial court found that a sole custody arrangement would not serve but would be detrimental to the child's best interests. Thus, the trial court supported its decision to divide physical custody of the child so as to in fact "bandy the child back and forth between parents." *See Scripter v. Scripter,* 190 Neb. 317, 318, 208 N.W.2d 85, 86 (1973). The court concluded that the emotional importance of preserving relationships with both parents rose above the emotional importance of preserving the intimacy of a primary parent relationship and the significance of a reasonably stable life in a single residence.

The trial court's opinion, while backed by findings of fact, contradicts views on the prior interest of children that are currently a settled part of Minnesota child care law. *See Pikula,* 374 N.W.2d 705 (priority for preserving intimacy of primary parent relationship); *Brauer v. Brauer,* 384 N.W.2d 595 (Minn.Ct.App.1986) (divided physical custody appropriate only in exceptional case; presumption for primary parent not diminished by prospect for compromise with divided custody arrangement).[1]

Respondent argues that appellant demands of the trial court a "wooden-like" calculation under *Pikula*. We disagree. *Pikula* poses a realistic standard. Thus, no preference exists where both parents are equally active in caring for the child. *Pikula,* 374 N.W.2d at 714. The decision shows keen judicial interest in evidence of activities that create and demonstrate an intimate parent-child relationship. *Id.* Similarly, the preference against divided physical custody is subject to evidence of unusual circumstances, either special reasons for the arrangement or special accommodations to ease disruption and instability

---

1. The trial court also observed that identification of a primary parent "would in effect be a guess as to which parent could perform the best as a [custodial] parent." This conclusion fails to take into account the supreme court's rationale in *Pikula.* The criteria introduced in *Pikula* are intended to identify a primary, intimate relationship, one that should be preserved. *Pikula,* 374 N.W.2d at 711, 714. Neither *Pikula* nor statutory law invites a search for the parent who will "perform the best," a virtue or fault inquiry that may have little to do with the interests of the child. *See* Minn.Stat. § 518.17, subds. 1, 3.

for the child. *See Brauer,* 384 N.W.2d 595; *Heard v. Heard,* 353 N.W.2d 157 (Minn.Ct. App.1984). Here the trial court made no findings of unusual circumstances but instead challenged the application of settled law.

The evidence compels the conclusion that appellant was the primary parent. There was insufficient evidence to support any alternative view. Accordingly, we reverse the decision of the trial court.

## DECISION

The trial court abused its discretion by failing to award sole physical custody to the appellant.

Reversed.