**In re the Marriage of Mark Allen TANGHE, Petitioner, Respondent,**

v.

**Debra Ann TANGHE, Appellant.**

No. C4-86-1455.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Donald E. Schmid, Jr., Hauser & Schmid, Sleepy Eye, for respondent.

James R. Anderson, Marshall, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Debra Tanghe appeals from custody determinations in a dissolution judgment and amended judgment. She argues that the trial court abused its discretion in making findings unsupported by the evidence and that the court's findings are insufficient to support the grant of custody. She also argues that the matter should be remanded on the issues of property settlement, maintenance and child support, and she requests attorney's fees on appeal. We reverse and remand.

### FACTS

Appellant and respondent, Mark Tanghe, were married on September 16, 1972. Respondent petitioned for dissolution of the marriage on November 22, 1985. At the time of the dissolution, the parties' five daughters were ages twelve, nine, seven, four and seven months.

During the marriage, appellant was employed for approximately six months. She has no education or training beyond high school and has been a full-time homemaker since graduating from high school. Respondent is employed full-time and also farms on a part-time basis. His average annual income is $21,000.

Both parties sought physical custody of the children. There is no dispute that during the marriage appellant provided the majority of the physical care, although respondent shared in certain responsibilities and was more involved in recreational activities than was appellant. The main area of contention centered on appellant's ability to appropriately discipline the children. At the dissolution hearing, there was testimony of two incidents near the time the dissolution petition was filed where appellant's discipline included scratching and biting. An incident five years earlier involved spanking one of the children with a wooden spoon. Several witnesses testified that appellant screamed and yelled at the children, while respondent was calmer in providing discipline. Respondent testified that appellant struck him and cursed at him in front of the children and told the children he was a sinner because he was seeking a divorce.

A social worker testified that respondent was more stable emotionally and financially than appellant. The children's guardian

ad litem agreed that respondent was more stable emotionally, but added that appellant had made progress in dealing with her emotions. The psychologist who had counseled appellant indicated that the dissolution proceedings were extremely stressful to her, a Catholic who views divorce as a sin. She added that appellant had made progress in addressing her emotional problems and that for a full-time homemaker raising five young children, yelling as a means of discipline is not unusual.

None of the expert witnesses investigated reports that respondent had physically abused appellant on approximately 20 occasions. The information was provided in a letter from a counselor at a domestic abuse treatment center, where a treatment program for respondent had been outlined. He did not complete the program.

Respondent acknowledged having spanked one of the children beyond the point necessary for disciplinary purposes. Appellant testified that the incident resulted in raising welts on the child. Two of the children indicated to the social worker that they were afraid of receiving spankings from their father.

The court granted joint legal custody. Physical custody of the four oldest children was granted to respondent with physical custody of the baby granted to appellant. In its initial findings, the court found both parties to be fit and proper persons to have custody of the children, but added:

> [Appellant] is an excellent caretaker of younger children but that she has had difficulties with the children as they have gotten older and attempted to assert their own personalities.

In amended findings, the court replaced its original finding of fitness with a finding that appellant is not a fit and proper person to have care, custody and control of the four older children.

## ISSUES

1. Did the trial court abuse its discretion in granting custody of four of the parties' children to respondent?

2. Must the issues of property division, maintenance and child support be remanded to the trial court for reconsideration in connection with the issue of custody?

3. Is appellant entitled to an award of attorney's fees on appeal?

## ANALYSIS

### I.

■ Review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). The court's findings must be sustained unless clearly erroneous. *Id.*, Minn.R.Civ.P. 52.01.

> [W]hen both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Pikula*, 374 N.W.2d at 712 (Minn.1985). Once the determination of primary caretaker has been made, there must be a strong showing of unfitness in order to grant custody to the parent who did not serve as the primary caretaker during the marriage. *Id.* at 714.

It is apparent that in both its initial and amended findings and the memoranda accompanying those findings, the trial court struggled with the *Pikula* requirement that custody be granted to the primary parent unless that parent was shown to be unfit. In its memorandum accompanying the original findings the court stated:

> The Court in this case was presented with a fact situation in which application of the *Pikula* case was difficult. [Appellant] was the primary caretaker of the minor children with regard to [their] physical needs * * *. While she had difficulty with administering appropriate discipline and the making of inappropriate remarks to the children, these did not approach any "strong showing of unfitness" as set forth in *Pikula*. In award-

ing custody of the four older children to [respondent], this Court finds that [he] has been the primary caretaker * * * with regard to meeting the children's emotional needs.

However, in its amended findings the court reversed its previous position and determined that appellant was not a fit parent to have custody of the four older children, stating specifically:

[W]hile the [appellant] has been able to meet the physical needs of the children, she is not able to understand or meet the emotional needs of the four oldest children.

\* \* \* \* \* \*

The [respondent] by his overall testimony and demeanor in the courtroom impressed this Court as a person who is soft spoken and mild mannered. That the Court was impressed with [respondent's] understanding of the emotional needs of the minor children and a willingness to put their needs before his own.

That the [appellant] by her overall testimony and demeanor impressed this Court as a person who was lacking in self control. That while she truly loves her children, that [appellant] does not understand the emotional needs of the children and the results of her behavior.

\* \* \* \* \* \*

[Appellant] suffers from a lack of self-esteem and has a dependent personality. [Respondent] appears well adjusted and suffers from no mental or physical problem. [Respondent] is judged to be the better able to give love, affection and guidance to the children. While the [appellant] loves the children, she appears to utilize the children to maintain her self-image as a "mother". She appears to want to mother the children and has problems when the children begin to mature and assert their own personalities. As a caretaker of infant children, [appellant] is found to be excellent.

In the memorandum accompanying the amended findings, the trial court sought guidance on what, in fact, constituted a "strong showing of unfitness" and questioned whether in determining which of the parents is the primary parent, all of the *Pikula* factors must be given equal weight.

In custody matters, as in family law matters generally, the specific facts of a case are critical. Issues must be resolved on a case by case basis and only after consideration of the unique facts of each case. Therefore, it is impossible to answer either of the concerns raised by the trial court except in the context of the specific facts of a particular case.

■ A consideration of the specific facts of this case leads us to conclude that the trial court was correct in initially determining that "both parties are fit and proper" and in error in subsequently finding that "[appellant] is not a fit and proper person to have * * * custody of the [four oldest children]". We conclude that the conduct and character traits of appellant which the trial court referred to in its amended findings fall short of parental "unfitness" as envisioned in *Pikula*. A review of the record indicates that the finding of appellant's unfitness rested primarily on three isolated incidents of improper discipline meted out by her, on testimony that she "yelled" at the minor children, and on comments made by her regarding respondent's efforts to dissolve the marriage. We note, too, that appellant was declared "unfit" only in regard to the four older children. She was deemed "excellent" in regard to the child who was yet an infant at the time of the dissolution. We certainly do not minimize the seriousness of the three incidents of inappropriate discipline. However, they were isolated and occurred over a period of several years. Further, both a psychologist and a social worker testified to the recent progress made by appellant in dealing with her emotions. Next, a parent who has the full-time responsibility to care for and discipline five young children, and yells occasionally in doing so, may not be engaging in the most constructive or appropriate disciplinary practices, but, as recognized by the psychologist at trial, is not engaging in unusual behavior. Appellant's

unfortunate and inappropriate remarks regarding respondent's decision to end the parties' marriage appear clearly to be situational and caused by the stress of the dissolution proceeding. Again, witnesses observed the progress which had been made by appellant in regard to her emotions.

Although the trial court made a finding of appellant's unfitness, its reluctance to do so based on the record before it is apparent. We believe the trial court concluded that respondent was the more capable disciplinarian and therefore the more capable parent, but recognized that under *Pikula* a grant of custody to the "more capable" parent is inappropriate if that "more capable" parent is also not the primary caregiver. The exception to that rule arises, of course, if the primary parent is determined to be unfit. The trial court amended its original findings to include a finding of unfitness so this exception could be employed. The record does not support that determination.

The trial court's concern about the weight to be given to each *Pikula* factor in determining primary parent must be answered in the same manner as its question about "unfitness." The weight to be given to each *Pikula* factor [1] also depends upon the unique facts of each case. In this case, however, we believe the factor relied on almost exclusively by the trial court was discipline, especially the comparative abilities of the parties in disciplining, and how the emotional stability of each parent affected that ability. Even assuming that such comparison would be appropriate under *Pikula*, the trial court did not complete its analysis. It briefly mentioned that there had been testimony regarding respondent's alleged abuse of appellant, but made no findings as to that alleged abuse

nor to respondent's failure to complete the treatment program recommended to him by a domestic abuse center. Nor did the court refer to the incident of excessive spanking by respondent or the fear of future spankings expressed to the social worker by two of the children. In contrast, the court did make findings regarding the three incidents of unfortunate and inappropriate discipline by appellant.

Further, we are concerned that the trial court's comparison of the parties' disciplinary abilities ultimately undermines the *Pikula* holding. *Pikula* requires that in order to provide stability in the children's lives and to avoid relying on inappropriate standards, custody must be granted to the primary caretaker, absent a showing of unfitness of that parent. 374 N.W.2d at 712–13. *Pikula* would appear to preclude granting custody on the basis of a finding that one parent is the more appropriate disciplinarian, unless, of course, the disciplinary practices of the other parent lead to a finding of unfitness. We have determined that such is not the case here.

In both its original and amended findings the trial court addressed many of the ten *Pikula* factors. In its amended findings, it stated that appellant provided most of the care in the areas of meal preparation and planning; bathing, grooming and dressing; purchasing, cleaning and care of clothes; medical care; and arranging alternate care. It indicated that there had been no testimony on arranging for social interaction among peers after school, but presumed appellant provided the majority of the transportation. It also found that the parties shared equally in putting the children to bed at night, educating the children and teaching elementary skills. It stated that appellant "has been able to meet the physi-

---

**1.** The ten factors enunciated in *Pikula* are:

(1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e., religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

374 N.W.2d at 713.

cal needs of the children." In its original findings the trial court had determined that appellant was the primary parent "during the infancy of the minor children", and in the memorandum accompanying the original findings that appellant "was the primary caretaker * * * with regard to * * * physical needs" and respondent "has been the primary caretaker * * * with regard to meeting the children's emotional needs." By declaring in the amended findings that appellant was "unfit" the trial court avoided the necessity of determining which parent was, in fact, the primary caretaker under the *Pikula* rationale. That determination must be made on remand. *See Regenscheid v. Regenscheid*, 395 N.W.2d 375 (Minn.Ct.App.), *pet. for rev. denied*, (Minn. Dec. 23, 1986).

Further, in view of our determination regarding appellant's fitness we specifically ask the trial court on remand to address the issue of which parent undertook the majority of discipline, and the impact which responsibility for full-time care of five young children may have on disciplinary methods. Possibly a parent who serves as a full-time homemaker and child caregiver occasionally may invoke different disciplinary techniques than a parent who works both full and part-time jobs and is not called upon to provide constant or consistent discipline. In addressing the emotional stability of the parties, the trial court should also make specific findings regarding respondent's alleged abuse of appellant and alleged inappropriate discipline of the minor children.

We also suggest that on remand the trial court specifically address any basis for dividing custody of the children, especially in view of our determination here that it erred in finding appellant unfit to have custody of the four older children. *See Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn.Ct.App. 1984). Finally, we direct the trial court to expedite this matter on remand.

## II.

If on remand the custody determination is altered, the trial court must reconsider issues of maintenance, child support, and property division. However, no meritorious argument has been advanced for this court's review of these issues prior to the trial court's redetermination of the custody issue.

## III.

Appellant has presented no specific argument for an award of attorney's fees on appeal, and we decline to grant such fees. She may request attorney's fees from the trial court upon remand of this matter.

## DECISION

The trial court abused its discretion in basing its custody determination on an erroneous finding of unfitness. The issues of maintenance, child support and property damage shall be reconsidered by the trial court in connection with the custody issue. No attorney's fees are awarded on appeal.

Reversed and remanded.