**In re the Marriage of Roger A. PETERSON, Petitioner, Appellant,**

**v.**

**Barbara J. PETERSON, Respondent.**

**No. C8–86–2026.**

Court of Appeals of Minnesota.

July 7, 1987.

Review Denied Sept. 23, 1987.

Thomas W. Wexler, Peterson, Engberg & Peterson, Minneapolis, for appellant.

Brian L. Sobol, Stephen C. Davis, Katz, Davis & Manka, Ltd., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., WOZNIAK and LESLIE, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Roger Peterson appeals from the trial court's amended judgment and decree respecting the issues of custody, child support, division of marital property, and attorney's fees. We affirm.

## FACTS

Barbara and Roger married in October 1979. In early 1982, they had one child, Jessica. They were separated for several months of their three-year marriage, with the final separation occurring in June 1983.

Although Barbara worked part-time after the birth of her daughter, she states she was the primary parent. She cared for her daughter, planned and prepared meals, took her to doctor appointments, and made alternative care arrangements. She also would bathe and dress her daughter, purchase, clean and take care of her clothes, primarily put her to bed at night, attend her in the middle of night, and attend her in the morning upon waking.

When Barbara and Roger first met, Barbara lied about her upbringing, stating that her mother was not alive and she lived with

her grandmother. At a deposition, Roger discovered this was untrue; Barbara's mother was still alive and living with Barbara's father. Barbara had never lived with her grandmother. Roger tried to make this lie the center of the litigation, calling it "The Big Lie." Barbara invented the lie in order to keep Roger from insisting upon a visit with her mother, who was very critical of the men in her life.

Roger had a teen-aged daughter, Megan, from his first marriage. Shortly after their marriage, his daughter moved in with Barbara and Roger. Barbara and her stepdaughter had a few physical and verbal altercations. Barbara attributed these altercations to Megan's violent temper. Roger alleged that Barbara caused the altercations with Megan.

In January 1983, Roger brought a dissolution action in Hennepin County District Court. After many continuances, an order for temporary relief, and the Court of Appeals' denial of Roger's petition for a writ of prohibition, Roger brought an action contesting paternity and an action alleging Barbara transmitted an infectious venereal disease to him, requesting money damages of $50,000.

Barbara is a travel agent who at the time of trial had net monthly pay of $1,000. Aside from child support, she had no other income from any other source. During depositions in May 1984, Barbara calculated her expenses at $1,500 per month, plus Jessica's expenses of $475 per month. At trial, Barbara introduced an updated expenses list projecting living expenses of $3,180 per month. The court determined that the updated list of projected expenses was "unreasonable" and "grossly exaggerated."

Roger is an attorney and 50% partner in his firm. In 1985, he received an income from the firm of $93,000 and took withdrawals from the law partnership totaling $127,000. Disregarding capital gains, the trial court found a monthly income of $6,000 to $7,000 per month.

The trial court granted Barbara sole custody of the parties' child, attorney's fees, and 80% of the marital property. It also awarded $850 in child support per month, applying the 1986 statute which was not yet in effect. Under the effective 1984 statute, the $850 monthly award constituted a $500 downward departure from the guidelines. Roger appealed.

## ISSUES

1. Did the trial court abuse its discretion in awarding physical custody to respondent?

2. Did the trial court abuse its discretion in determining the amount of child support?

3. Did the trial court abuse its discretion in the division of marital property?

4. Did the trial court err in awarding respondent attorney's fees?

## ANALYSIS

### I. Custody.

Review of a custody determination is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or improperly applying the law. The trial court's findings must be sustained unless clearly erroneous. *Tanghe v. Tanghe*, 400 N.W.2d 389, 391 (Minn.Ct.App.1987).

■ A. Adequate Findings. Roger argues the trial court failed to make adequate findings regarding the statutory custody factors and the *Pikula* factors. *See* Minn.Stat. § 518.17, subd. 1 (1984); *Pikula v. Pikula*, 374 N.W.2d 705, 713 (Minn. 1985). Regarding the section 518.17 factors, the court implicitly applied those factors in its discussion. The court need not make specific findings as long as the findings as a whole reflect that relevant statutory factors were considered. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 171–72 (1976).

■ Regarding the *Pikula* factors, the trial court found that Barbara has been the

child's primary caretaker, taking primary responsibility for the performance of caring and nurturing duties of a parent, including preparing and planning of meals; bathing, grooming and dressing; purchasing, cleaning, and care of clothes; medical care, including nursing and trips to physician. Even though the court included a few factors not applicable to an 11–month old child, such as education in social and religious skills, the record indicates the trial court was correct in finding that Barbara undertook relevant primary parenting tasks. Further, even prior to the separation, she undertook these tasks much more regularly than Roger.

B. Unfit parent. Roger further argues that, even if the trial court was correct in initially finding that Barbara was the primary parent, it erred in finding that she was a fit parent. *Pikula*, 374 N.W.2d at 714. Roger suggests that Barbara is not a fit and proper parent based on her misstatements regarding her upbringing and her poor relationship with her stepdaughter.

Court Services found no direct effect between Barbara's lies and her relationship with Jessica, her parenting abilities, or the welfare of the child. It concluded that the misconduct was not symptomatic of any serious psychiatric condition, and that Roger's concerns were not significant enough to outweigh the psychological attachment that Jessica had for her mother and Jessica's developmental needs.

■ The trial court is precluded from considering conduct of a proposed custodian that does not affect the relationship with the child. *See Tasker v. Tasker*, 395 N.W.2d 100, 104 (Minn.Ct.App.1986). Therefore, it did not clearly abuse its discretion when the custody study indicated that Barbara's behavior did not affect her relationship with the child.

With regard to Barbara's behavior toward Megan, the custody study concluded that "very little" of the poor relationship with Megan was due to Barbara's own parental faults. Rather, the problems stemmed from normal step-family problems, serious marital discord about parenting of Megan, and Megan's own preexisting problems with poor control of her aggressive impulses. The custody study concluded that Roger's problems with Megan are more relevant to *his* questionable fitness as a parent than to Barbara's. Presented with this evidence, the trial court did not err in concluding that Barbara was a fit person to have sole physical custody of the parties' daughter.

■ C. Evidentiary issues. The trial court denied Roger's request to allow his expert witness to testify because of the untimeliness of the request and the lack of foundation to the testimony. Roger notified the court of the witness's testimony only four days prior to trial in a case which had been ongoing for three years. The trial court has discretion to determine what type of evaluations to admit into evidence. *See Sheeran v. Sheeran*, 401 N.W.2d 111, 116 (Minn.Ct.App.1987). Further, his expert's testimony was without foundation. The expert witness never interviewed Barbara or Jessica, but made all his recommendations based on Roger's statements.

■ Neither did the trial court err in failing to recommend further psychiatric evaluation. The statute requires the court to consider the parties' mental health. Minn.Stat. § 518.17, subd. 1(g). The counselors making the custody study extensively reviewed and evaluated the issue and did not recommend further psychiatric evaluation. We find nothing in the circumstances of this case to justify interfering with the trial court's decision.

## II. Child Support.

■ The trial court awarded $850 per month, correctly applying the 1986 support guidelines. Minn.Stat. § 518.551, subd. 5 (1986) (amending Minn.Stat. § 518.551, subd. 5 (1984)) (effective August 1, 1986). This trial was conducted in January 1986, prior to the effectiveness of the new guide-

lines. Under the applicable statutory guidelines, child support is computed at $1,362. *Id.* § 518.551, subd. 5 (1984). In effect, the judge's ruling represents a $500 downward departure from guidelines.

The trial court is not obligated to apply the guidelines and must use them only as a guide. *Moylan v. Moylan,* 384 N.W.2d 859, 863 (Minn.1986). The court explained the child support award by noting that the child is young and does not have extraordinary needs; Barbara is gainfully employed; and Roger does not believe in raising a child extravagantly and would not raise the child extravagantly had the parties been married. Accordingly, we hold the trial court did not abuse its discretion in determining the child support award.

### III. Marital Property Division.

■ The trial court found that the parties' marital assets totaled $380,000. It subtracted from this sum the amount of money generated after the parties' separation and costs of doing business, finding net marital assets of $81,000. From this amount, Barbara received $69,550, over 80% of the net marital assets.

The court may make a disproportionate award of property. A mathematically equal division of property is not mandated, *Johns v. Johns,* 354 N.W.2d 564, 566 (Minn. Ct.App.1984), particularly where Roger has substantial assets and income from his law practice, while Barbara has a high school education and minimal assets. *Cf. Dahlberg v. Dahlberg,* 358 N.W.2d 76, 80 (Minn. Ct.App.1984) (court held disproportionate award of marital debt was equitable based on the parties' disproportionate financial and professional assets). Accordingly, in view of Barbara's limited award in comparison to the total marital assets, we hold the trial court did not abuse its discretion in its award of marital property.

### IV. Attorney's Fees.

■ Awarding attorney's fees and expenses at trial rests within the discretion of the trial court. An award should not be reversed absent a clear abuse of discretion.

*Novick v. Novick,* 366 N.W.2d 330, 334 (Minn.Ct.App.1985). Given the parties' disproportionate assets, levels of income, and Roger's commencing of multiple actions and motions, the trial court did not abuse its discretion. *See Farrar v. Farrar,* 383 N.W.2d 436, 441 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 22, 1986).

■ Barbara also brought a motion requesting fees of over $7,000 incurred in preparing for this appeal. The special term panel deferred the decision on this matter to this panel. Given her award of attorney's fees at the trial court and her comfortable standard of living afforded by her employment, the child support award, and the property division, we decline to grant attorney's fees for this appeal.

### DECISION

The trial court is affirmed in all respects.