**In re the Marriage of Edwin Arthur STEINKE, Petitioner, Respondent,**

v.

**Kathleen Hope STEINKE, Appellant.**

**No. C2–88–910.**

Court of Appeals of Minnesota.

Aug. 23, 1988.

John J. Brossart, Tanner & Ring, P.A., Hastings, for petitioner, respondent.

Lorraine S. Clugg, Bloomington, for appellant.

Considered and decided by LANSING, P.J., and SCHULTZ * and LOMMEN,* JJ., without oral argument.

## OPINION

A. PAUL LOMMEN, Judge.

Kathleen Hope Steinke appeals the trial court's order for joint physical custody of the party's three children, contests certain child support and debt obligations ordered by the trial court, and seeks attorney fees incurred in this appeal. We reverse the trial court's physical custody decision, because the court failed to apply the *Pikula* factors and determine which parent was the primary caretaker.

## FACTS

The parties were married on June 26, 1976. They have three sons: Michael, born March 11, 1977 (age 10 at time of trial); Robert, born July 28, 1983 (age 4 at time of trial); and Jeffrey, born July 16, 1985 (age 2 at time of trial).

### 1. *Custody*

The court-appointed guardian ad litem recommended joint legal and physical custody, with the children living with the mother during the school year and the father during the summer. After interviewing the two older children, a psychologist and court services recommended joint physical custody with primary physical custody in the mother.

The court interviewed the oldest child, by himself, in chambers and on the record. The child informed the court he preferred to live with the mother because the father "... tries to buy my love." The court also noted the child said he did not like Christmas because it was "too materialistic." The court concluded that the child's "reasons for his preference are not credible."

In its first order, the court found

That both parties have been actively involved in parenting the children to the

extent permitted by their respective employment.

Based on these findings, the court ordered that the parties have joint legal and physical custody. The children were to reside with respondent father during the school year and with appellant mother during the summer. Each parent was entitled to liberal visitation during the times they did not have physical custody.

On February 16, 1988, the mother moved for amended findings and for sole physical custody with her. On April 5, 1988, the trial court denied her motion to change custody.

In its second order and memorandum the court expanded on the reasoning for its custody decision. The court declined to apply the *Pikula* primary parent analysis, stating it was not operative because "the parties here were awarded joint physical custody of their children." The court considered factors (a)-(i) relating to best interests, from Minn.Stat. § 518.17, subd. 1, and then went on to consider the additional factors relating to joint custody, from Minn.Stat. § 518.17, subd. 2.

The court found that both parents have "demonstrated an ability to cooperate in dealing with visitation issues since their separation;" and have demonstrated that they have both "deficiencies" and good qualities necessary for parenting and that they both care substantially for their children. The court concluded that "[g]iven the various weaknesses and strengths of [their] parenting skills * * *, joint physical and legal custody is appropriate," because it would serve the best interests of the children, citing *Berthiaume v. Berthiaume*, 368 N.W.2d 328 (Minn.Ct.App.1985).

### 2. *Child Support*

For child support, the court ordered appellant to pay respondent $150 per month during the school year, and respondent to pay appellant $650 per month during the summer. The court also concluded each party should be responsible for his or her

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

own attorney fees. Both parties were ordered to endorse a tax refund check for $770 so that the father could use it to pay some of the childrens' outstanding medical bills.

### 3. *Outstanding Debts*

The trial court allocated a $2,087.90 debt due to the Hastings Family Practice Clinic: $1,000 to be paid by respondent father, and $1,087 to be paid by appellant mother. Then in its second order, the court redistributed that debt so that respondent is to pay $1,472.91 ($1,087.91 plus one-half of a $770 tax refund check, $385) and appellant is to pay $615 ($1,000 minus one-half of the parties' tax refund check).

Kathleen Steinke appeals the custody order and seeks primary physical custody. She also appeals the child support order and the allocation of debts.

## ISSUES

1. Did the trial court err in failing to determine if either parent was the primary caretaker and in finding joint physical custody to be in the best interests of the children?

2. Should the child support order and distribution of debts be modified?

3. Is appellant entitled to attorney fees incurred in bringing this appeal?

## ANALYSIS

■ Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). The trial court's findings must be sustained unless clearly erroneous. *Id.*

### I.

The paramount interest in custody determinations is the best interest of the children. In furtherance of that interest, *Pikula* holds that

when both parents seek custody of a child too young to express a preference, and one parent has been the primary caretaker of the child, custody should be awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian.

*Id.* at 712.

The trial court did not follow the mandate of *Pikula* in several ways. First, the court decided that the primary parent analysis was not operative where the court viewed joint physical custody to be in the best interests of the children. Second, *Pikula* directs that the child's preference be of significant weight if the child is old enough, and here the court disregarded the strongly expressed preference of the oldest child. Finally, the court decided that joint physical custody would be in the best interests of the children, even though it disrupts continuity of care with the primary caretaker, which is "not only central and crucial to the best interest of the child, but is perhaps the single predicator of a child's well-being about which there is agreement." *Id.* at 712.

### A. Primary Parent Analysis vs. Joint Custody

■ The primary parent preference should not be treated as secondary to a preference for joint physical custody. *Brauer v. Brauer*, 384 N.W.2d 595, 598 (Minn.Ct.App.1986).

*Pikula* pointedly mandates that the courts preserve the child's intimate relationship with the primary parent. Moreover, the supreme court's demand to salvage benefits for the children coincides with an historic preference against joint physical custody. Joint physical custody, because of the divisiveness inherent in such a scheme, can rarely be in the best interests of a young child, and it is appropriate only in exceptional cases.

*Id.* The primary concern under Minnesota law is maintaining regularity and stability in a child's life. *Id.*

It was evident here "the court was reluctant to be governed by the *Pikula* decision." *See Gerardy v. Gerardy*, 391 N.W.2d 915, 918 (Minn.Ct.App.1986), *pet. for review denied* (Minn. Oct. 17, 1986). As in

*Gerardy* the court found that a sole custody arrangement would not serve but would be detrimental to the children's best interests, and that preserving the children's relationships with both parents was more important than "preserving the intimacy of a primary parent relationship and the significance of a reasonably stable life in a single residence." *Id.* at 918. This approach contradicts settled Minnesota law. *Id.*

Instead, the court followed the *Berthiaume* case which upheld an order of joint physical custody because both parents had a strong and loving relationship with the children, both were capable of having custody of the children, and the trial court determined that the children needed the guidance and care of both parents. *Berthiaume v. Berthiaume*, 368 N.W.2d 328, 332 (Minn.Ct.App.1985). *Berthiaume* was decided before *Pikula*, however, so it did not require the threshold determination of which parent was the primary caretaker.

Essentially the court decided that the parties should have joint physical custody because of the "various weaknesses and strengths of [their] parenting skills."

■ While these are valid concerns, the court is not analyzing them in accordance with Minnesota law. If the court determines one parent to be the primary caretaker, it can then reject that parent as the sole custodian if he or she is unfit, or if having the children in his or her sole custody would endanger the children physically or emotionally. *See Pikula*, 374 N.W.2d at 714. If the court determines that both parents were equally involved in the performance of child care, then it may decide the custody issue according to the factors determining the children's best interests. That is essentially the step to which the court skipped without taking the intermediate steps.

■ The trial court should have decided if either parent was the primary caretaker of the children during the time up to the separation. The primary caretaker is the parent who has taken primary responsibility for, *inter alia*, the performance of the following caring and nurturing duties of a parent:

(1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; ■ arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e., religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

*Pikula* 374 N.W.2d at 713.

■ The court applied the correct statutory factors for determining the children's best interests. However, the trial court ignored the preference against divided physical custody, which applies unless there is "evidence of unusual circumstances, either special reasons for the arrangement or special accommodations to ease disruption and instability for the child." *Gerardy*, 391 N.W.2d at 918–19.

■ Even if the court otherwise properly applied the best interests standards, it failed to consider one very important factor: the clearly expressed preference of the ten year old child. The court gave no reasons why it found Michael's testimony not credible.

The guardian ad litem, Susan Gegen, also testified that Michael's preference was to live with his mother during the school year. She stated that he is a fairly mature 10-year-old. Although she testified a 10-year-old cannot give a "necessarily accurate assessment," she stated it was clearly a very important issue to him, because it's more fun to be with his mother or "more of a relationship."

The statute is clear that the choice of an older child is a very important factor for the court to consider. Minn.Stat. § 518.17, subd. 1. Respondent cites *Barrett v. Barrett* in support of the argument that the court "should not delegate to children its

role in determining such sensitive issues." *Barrett v. Barrett*, 394 N.W.2d 274, 279 (Minn.Ct.App.1986). *Barrett* involved a court order that left the days and time of visitation to be agreed upon between the noncustodial parent and the children. *Id.* at 279. The court said that that sort of an ongoing, specific role should not be delegated to the children, but that their choices and preferences must be seriously considered in determining visitation in general.

The court erred in failing to determine which parent was the primary caretaker, in ordering joint physical custody absent a finding of exceptional circumstances, and in failing to justify its decision to disregard the preference of the oldest child.

We remand so the trial court can apply the *Pikula* factors and determine which, if either, parent, was the primary caretaker during the time up to the parties' separation.[1]

## II.

Appellant asks this court to modify the child support order to reflect any change giving her custody of the children. If on remand custody is changed, the trial court must reconsider the issue of child support. *Tanghe v. Tanghe*, 400 N.W.2d 389, 394 (Minn.Ct.App.1987). Appellant also seeks to have the tax exemptions for all three children if she is given sole custody. This should also be reconsidered by the trial court in accordance with its custody decision.

Appellant also contests the trial court's order requiring her to pay $615 and respondent to pay $1,472.91 to the Hastings Family Practice Clinic. She claims that the total debt was only $1,729 and that only $323 of that was for the children's expenses, the rest being bills solely attributable to respondent's care. She states she should pay only $300 and respondent should pay $1017.91, applying the tax refund check of $770 towards his portion, as he was ordered to do in the Order for Temporary Relief.

Appellant is seeking modification of a single debt out of the context of the other obligations divided between the parties. Appellant has not presented any compelling arguments supporting her request. There is not sufficient evidence before this court to reallocate the debts.

## III.

Appellant seeks attorney fees incurred in this appeal. The trial court made findings as to the parties' incomes but not as to their expenses. Respondent's net monthly income was shown to be $1,860 and his expenses $1,762. Appellant's income is $844 and her expenses as presented to the trial court were over $1,000, excluding child support. Respondent does not contest these figures but argues that the trial court denied all requests for attorney fees for expenses incurred at the trial level, and that appellant's circumstances have not changed.

Notwithstanding, we can award attorney fees to appellant for the cost of her appeal under Minn.Stat. § 518.14 (1986). The award of attorney fees lies in the discretion of the court. *Katz v. Katz*, 408 N.W.2d 835, 840 (Minn.1987). Considering the parties' relative financial positions, appellant is entitled to $400 in attorney's fees for this appeal. *See Gillis v. Gillis*, 400 N.W.2d 775, 777 (Minn.Ct.App.1987).

REVERSED AND REMANDED.

---

1. In this case the time period since the parties' separation has not been so extended as to require the court to consider the parties' parenting in the time *after* their separation. *See Sefkow v. Sefkow*, 427 N.W.2d 203 (Minn.1988).