**Eric Rodney TOMPKINS, Appellant,**

v.

**Barbara Delynn TOMPKINS, Appellee.**

No. S–8373.

Supreme Court of Alaska.

July 17, 1998.

---

Vincent Vitale, Anchorage, for Appellant.

Vanessa H. White, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal requires us to review the superior court's determination in a dispute between two capable parents, Eric and Delynn Tompkins, over the custody of their three children. The superior court decided that, on balance, Delynn was better able to meet the children's social and emotional needs and to provide them with continuity in their environment. It also concluded that Delynn's conduct toward her first husband demonstrated that she would be dedicated to assuring that the children maintained a strong, healthy relationship with Eric. The court therefore awarded primary physical custody to Delynn. Because the record supports the superior court's findings, we affirm.

## II. FACTS AND PROCEEDINGS

Eric and Delynn Tompkins separated in 1995 after nearly ten years of marriage. Their dispute centers on the custody of their three children, Reed, age ten, and Katherine and Kelley, age nine.

After Eric and Delynn separated, Eric, a military doctor, continued to live in the family home on Elmendorf Air Force Base. Delynn, a registered nurse, moved into an apartment in East Anchorage. In the two years between the separation and trial, the three children lived with both parents on a "week on/week off" custody schedule and continued to attend the military school on base. The parents, the children, and the custody investigator agreed that this schedule worked well for all members of the family. Unfortunately, it became impossible to continue this shared custody schedule after Eric learned that he was being transferred to Germany.

Both parents requested primary physical custody of the children at trial. Although the custody investigator, Pamela Montgomery, recommended a rotating two-year schedule, Delynn and Eric agreed that the children would benefit from a more stable arrangement. As a result, they requested that the children spend the school year with one parent and summers and some holidays with the other parent. When asked to assume a schedule in which the children would live primarily with one parent, Montgomery stated that she had no concerns about either Eric's or Delynn's parenting skills. She believed, however, that the children would experience less disruption in their lives if they remained in Anchorage, near familiar surroundings, friends, and their half-sister Lauren, Delynn's daughter from a previous marriage. Montgomery also reported that the children did not wish to express a preference for one parent as primary custodian.

At trial, each parent presented his or her own testimony and the testimony of several witnesses. Eric contended that he should receive primary custody because it would increase the children's "face time" with each parent. He explained that his own work schedule paralleled the children's school year schedule; he expected to work regular business hours in Germany, Monday through Friday, with few on-call emergencies. As a result, he was concerned that if the children lived with him only in the summers, when they would not be attending school, they would spend the majority of their time with a child care provider rather than with him.

Eric explained that if the court awarded him primary custody, his brother Jeffrey would be available to care for the children in Germany. A computer software engineer, Jeffrey had decided to take time off from his career to pursue his interests in art and travel. He testified that he planned to live with Eric and care for the children for at least their first six months in Germany, and perhaps for as long as one year.

Jennifer Olson, Eric's child care provider, also testified on his behalf. In response to a question about how the children appeared to be coping with the divorce, Olson attempted to recount the children's statements about their preference for living with their father. The superior court cut off this testimony, however, after Delynn objected to it on hearsay grounds.

Delynn claimed that the children would benefit from living primarily with her for several reasons. First, because of her work schedule, Delynn expected to be home for the children, at least a few days per week, when they returned from school. Second, she believed that the children would profit from the stability of remaining in the same community, near their friends and half-sister Lauren. Finally, Delynn felt that she could better meet the children's emotional needs.

Like Eric, Delynn also had plans for child care. Her daughter Lauren testified that she planned to live with her mother and attend the University of Alaska, Anchorage (UAA) for at least the next two years. In the past, Lauren had cared for the children while her mother worked and believed that her schedule at UAA would be flexible enough to permit her to continue to do so.

Lauren also testified about her relationship with Eric. When Delynn married Eric, Lauren was six years old. Lauren stated that she grew to love Eric in the years she lived with him and had believed that they were close. She explained that since his separation from Delynn, however, Eric had failed to maintain a relationship with her. Additionally, Lauren testified that, as she was growing up, Eric had often made her feel intellectually inadequate. She recounted one incident when Eric had spanked her for failing to recite her multiplication tables quickly enough.

As her last witness, Delynn called her first husband, Alvin Wilson. Wilson stated that, after their divorce, Delynn had been consistently accommodating in allowing him to spend time with Lauren and had often gone "beyond the call of duty" in assuring that Lauren maintained a good relationship with him.

After considering the relevant factors for determining custody under AS 25.24.150(c), Superior Court Judge Karen L. Hunt ruled that it was in the children's best interests to live with their mother during the school year and with their father during summers and some holidays. She concluded that three of the statutory factors favored awarding primary physical custody to Delynn. First, she found that Delynn was better able to meet the children's social and emotional needs.[1] Second, she found that the children lived in a stable, supportive environment in Anchorage and that it was in their interest to maintain this environment.[2] Third, Judge Hunt found that Delynn's conduct towards her first husband showed that she would be willing to make personal sacrifices to ensure that her children had a healthy, strong relationship with Eric.[3] Judge Hunt also concluded that the children had not expressed a preference for living primarily with one parent rather than the other.

Eric appeals.

## III. DISCUSSION

### A. Standard of Review

We will reverse a superior court's resolution of custody issues only if we are "convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[4] The superior court abuses its discretion when, "in reaching its decision, [it] considers improper factors, fails to consider statutorily mandated factors, or gives too much weight to some factors."[5] A factual finding is clearly erroneous if we are "left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding."[6]

### B. Did the Superior Court Abuse Its Discretion by Considering Eric's Relationship with His Stepdaughter as a Factor in Determining Custody of Eric's Natural Children?

 According to AS 25.24.150(c)(2), the superior court was required to compare the

---

1. *See* AS 25.24.150(c)(2).

2. *See* AS 25.24.150(c)(5).

3. *See* AS 25.24.150(c)(6).

4. *Vachon v. Pugliese,* 931 P.2d 371, 375 (Alaska 1996) (citations omitted).

5. *Kessler v. Kessler,* 827 P.2d 1119, 1119 (Alaska 1992).

6. *Brosnan v. Brosnan,* 817 P.2d 478, 480 (Alaska 1991).

parents' desire and capacity to meet the children's physical, social, religious, mental and emotional needs. The court ruled that Eric was less able than Delynn to meet the children's emotional needs because his "lack of any meaningful contact with" Lauren after the separation had demonstrated emotional insensitivity "as well as a lack of understanding of child and adolescent emotional development." Eric argues that because the custody investigator found that he was an excellent parent to his three natural children, the superior court should not have considered his relationship with Lauren as a factor in deciding custody. He claims that his relationship with "his college-aged stepdaughter was not a valid predictor of his relationship with his own children."

Eric has cited no authority precluding trial courts from considering a parent's relationship with a stepchild in a custody dispute over that parent's natural children. Our own research reveals only one case discussing this issue. In *Peterson v. Peterson*,[7] the Minnesota Court of Appeals decided that a mother's poor relationship with her stepdaughter did not justify denying her sole physical custody of her natural daughter. The court's ruling was based on findings that the difficulties in the relationship "stemmed from normal step-family problems, serious marital discord about parenting of the [stepdaughter], and [the stepdaughter's] own preexisting problems with poor control of her aggressive impulses."[8] The court therefore concluded that the nature of the relationship was not indicative of the mother's skills as a parent, not, as Eric urges, that a parent's relationship with a stepchild is always an invalid gauge of parenting skills.

Like the *Peterson* court, we are unwilling to conclude that a relationship with a stepchild is never relevant to a custody dispute over a parent's natural children. Instead we believe that the sounder approach, represented by the *Peterson* decision, is to consider the factual circumstances underlying the parent-stepchild relationship in assessing its relevance. Eric has not argued that his rift with Lauren stems from her own inappropri-

ate behavior, or from discord over her parenting. The record also provides no support for concluding that Eric's relationship with Lauren should not be considered indicative of his parenting skills. Given these facts, we find that the superior court did not abuse its discretion in considering the relationship as one factor in its custody decision.

■ Eric also suggests that even if the court permissibly considered his relationship with Lauren, it afforded undue weight to this factor. But nothing in the record suggests that the superior court weighed this factor more heavily than any of the other factors that it considered. The superior court devoted one paragraph to its discussion of this factor, as it did to the issue of continuity in the children's environment. We therefore find no merit to this argument.

■ Finally, the superior court's consideration of Lauren's role in the family was not limited to the question of whether Eric had abandoned her. The court also examined the benefit to the children of remaining in the same household as their half-sister. This analysis was appropriate. "[C]onsideration should be given to the desirability of keeping the children of the family together," even when the children are only half siblings. *Morel v. Morel*, 647 P.2d 605, 607–608 (Alaska 1982) (quotation and citations omitted). In this case, the children had a strong bond with Lauren and expressed sadness at the thought of leaving her. Although Lauren was already eighteen at the time of trial, the record shows that she planned to live with her mother and the children for at least the next two years. As a result, granting custody to Delynn allowed the children of the family to remain together.

### C. Did the Superior Court Clearly Err in Finding that the Children Did Not Express a Preference?

■ Alaska Statute 25.24.150(c)(3) requires superior courts to consider the preference of a child, if he or she is of sufficient age and capacity to form a preference, in making a custody decision. Based on the custody

**7.** 408 N.W.2d 901, 904 (Minn.App.1987).

**8.** *Id.*

investigator's conclusion that none of the children preferred to live primarily with one parent rather than the other, the superior court found that "[t]he children's preference, if any, is not known to the court." Eric contends that this finding was clearly erroneous because his child care provider, Olson, had testified at trial that the children had expressed a preference to live with Eric. The superior court excluded this testimony after Delynn objected to it on hearsay grounds. Eric claims that the court should have considered this testimony for two reasons: first, Delynn failed to make a motion to strike the testimony; second, the testimony was proper under Alaska Evidence Rule 803(3), the state of mind exception to the hearsay rule.

▇ There is no requirement in Alaska's rules of evidence or civil procedure that a trial judge must consider evidence to which an objection is sustained if the objecting party did not move to strike the evidence from the record. Additionally, the cases Eric cites to support his argument do not prove his point. The first case, *Oakes v. Peter Pan Bakers, Inc.*,[9] merely holds that a tardy objection, without a motion to strike, is an insufficient basis for claiming that the trial judge erred in an evidentiary ruling.[10] Similarly, the second case, *Cooper v. Magic City Trucking Service, Inc.*,[11] explains that an erroneously sustained objection is harmless error when the jury hears the testimony and is not instructed to disregard it.[12] Neither case establishes that a judge must consider evidence unless it is stricken from the record. We therefore reject Eric's first evidentiary argument.

Eric argues in the alternative that the superior court should have overruled Delynn's objection because Olson's account of the children's preference falls within the state of mind exception to the hearsay rule. Eric never presented this argument to the superior court. Although the rules of civil procedure do not require parties to make a formal exception to a judge's ruling, they do require that parties communicate how they want the judge to rule or explain their reason for disagreeing with the ruling.[13]

In this case, Eric in no way suggested to the superior court that he was seeking to introduce the children's preference into evidence. Instead, Olson volunteered the children's statements in response to a question on a different topic; Eric had asked her how the children appeared to be coping with the divorce. After the superior court sustained Delynn's objection to the testimony on hearsay grounds, Eric did not ask to be heard on the matter. Indeed, there is no support in the record for the fact that he ever requested the court to consider whether Olson could testify about the children's preferences under the state of mind exception. Furthermore, Eric failed to list the court's ruling on this issue as an alleged error in his points on appeal.[14] We therefore conclude that he has waived this issue.

D. *Did the Superior Court Err in Concluding that Granting Custody to Delynn Would Provide More Stability and Continuity for the Children?*

Alaska Statute 25.24.150(c)(5) instructs courts to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity" in determining custody. The superior court concluded that the children's school, friends, and activities in Anchorage provided them with a supportive, stable environment. It also found that it would be in the children's best interest to maintain this stable environment and concluded that the children would experience more disruption if they moved to Germany. Eric contends that this conclusion is clearly erroneous and contests several of the superior court's findings supporting this conclusion.

---

**9.** 258 Iowa 447, 138 N.W.2d 93 (1965).

**10.** *See id.* 138 N.W.2d at 96.

**11.** 288 Ala. 585, 264 So.2d 146 (1972).

**12.** *See id.* 264 So.2d at 152.

**13.** *See* Alaska R. Civ. P. 46(f).

**14.** *See Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 797 (Alaska 1984) (holding that issue not included in points on appeal will not be considered absent mitigating circumstances).

Eric first claims that the record does not support the court's finding that his immediate living circumstances would be unstable and unknown when he arrived in Germany. The record shows, however, that Eric failed to provide specifics at trial about the housing arrangements awaiting him and the children. Similarly, Eric's trial testimony revealed that the children would have to move three times in approximately three months if they lived with their father. Thus, the record amply supports the superior court's determination regarding the unknown and unstable nature of Eric's housing plans.

Eric next argues that the court erred in finding that the children's day care arrangements in Germany would be "uncertain." Judge Hunt explained in detail, however, why she believed that Eric's planned child care arrangements would not promote stability in the children's lives. First, she noted that Eric's intended child care provider, his brother Jeffrey, was moving to Germany primarily to live abroad and pursue his interest in art. In addition, she stated that Jeffrey had no child care experience, and as a result, the children would lack a knowledgeable child care provider who was aware of their developmental needs. The record supports the court's conclusions.

Finally, Eric contends that the superior court erred in concluding that the children's environment would be stable if they remained in Alaska. Eric is correct that significant changes await the children even if they continue to live in Anchorage, such as a change in schools. The record shows, however, that living with Delynn would provide the children with access to their half-sister Lauren, friends, familiar surroundings, and established activities in Anchorage. Thus, we conclude that the court did not err in finding that remaining in Alaska would promote stability in the children's lives.

## IV. *CONCLUSION*

Faced with a difficult decision in choosing between two excellent parents, the superior court did not abuse its discretion in awarding primary custody to Delynn. The record provides ample support for the court's conclusions that, on balance, Delynn was better able to meet the children's emotional needs, to provide them with continuity in their environment, and to assure that they maintained a strong relationship with their other parent. The decision of the superior court is therefore AFFIRMED.

I.J.D., Appellant,