PRODUCTION CREDIT ASSOCIATION OF REDWOOD
FALLS v. MICHAEL GOOD AND ANOTHER.

228 N. W. 2d 574.

April 18, 1975—No. 45161.

*Barnard, Hilleren & Spates, Richard H. Hilleren,* and *Mark A. Jothen,* for appellant.

*Gislason, Alsop, Dosland & Hunter* and *Robert M. Halvorson,* for respondent.

Heard before Kelly, Todd, and Chanak, JJ., and considered and decided by the court en banc.

NICHOLAS S. CHANAK, JUSTICE.*

This is an appeal from an order of the District Court, Meeker County, finding defendant Michael Good in direct civil contempt of court and sentencing him to serve 6 months in the Meeker County jail. The contempt order arises out of defendant's refusal to answer certain questions put to him by plaintiff's counsel during proceedings supplementary to execution.[1]

Defendant and his wife[2] had obtained loans from plaintiff and

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1] In sentencing defendant for contempt, the trial court afforded defendant an opportunity to purge himself of contempt at any time by agreeing to answer the questions of plaintiff's counsel.

[2] Although Janet Good, Michael Good's wife, is a named defendant, she is not involved in this appeal as she answered all questions put to her by plaintiff's counsel during the supplementary proceedings.

had given plaintiff a security interest in their livestock, crops, and certain farm equipment. When plaintiff obtained information indicating that defendants had sold or converted to their own use some of the secured property and were attempting to defraud plaintiff, plaintiff accelerated the loan and demanded payment of the outstanding balance in February 1974. Defendants failed to pay and plaintiff, on April 5, 1974, obtained a default judgment in the amount of $132,869.27, plus attorneys fees of $5,000.

Upon return of execution wholly unsatisfied, plaintiff brought supplementary proceedings under Minn. St. c. 575. The hearing was commenced May 17, 1974, before a referee. Defendant refused to answer certain questions put to him by plaintiff's counsel,[3] claiming his Fifth Amendment privilege against self-incrimination. When defendant announced that upon the advice of counsel he would refuse to answer any questions other than his name, age, and address, plaintiff's counsel requested that the hearing be adjourned and reconvened before a judge.[4]

Counsel's request was granted and on May 20, 1974, the hearing was reconvened before the trial court. Plaintiff's counsel asked defendant a number of questions relating to his financial dealings and status. Defendant again claimed his Fifth Amendment privilege, refusing to answer most of the questions of substance put to him. Defendant's claim of privilege when questioned regarding his Federal income tax was sustained by the

---

[3] It is interesting to note that since this case arose, the United States Supreme Court has held that counsel is not subject to contempt sanctions for advising in good faith a client to claim the Fifth Amendment privilege. The court has suggested, however, that the fact that the client has been granted immunity might constitute evidence of counsel's bad faith in nonetheless advising his client to claim the privilege. Maness v. Meyers, 419 U. S. 449, 95 S. Ct. 584, 42 L. ed. 2d 574 (1975).

[4] Our holding hereinafter expressed applies only to a situation where an answer is compelled by a judge subsequent to a witness's invoking the Fifth Amendment privilege against self-incrimination. Cf. Minneapolis Willys-Knight Co. v. Bergan, 178 Minn. 158, 226 N. W. 188 (1929).

court. The judge ordered defendant, however, to answer questions relating to recent purchases and sales of real and personal property, bank accounts, and other assets owned by him, whether he was acquainted with certain named persons, and whether anyone owed him money. Defendant refused to answer when ordered to do so.

The hearing was continued and reconvened on May 24, 1974. At that time defense counsel argued that the questions which defendant had refused to answer would tend to incriminate him of selling property mortgaged through a Federal agency, Federal mail fraud, theft, obtaining goods by the use of false credit methods, possession of stolen property, and adultery. He did not explain how the questions asked would tend to incriminate defendant of the offenses mentioned. The court ruled that the questioning of defendant was proper and that defendant was protected by a statutory grant of immunity. We agree and affirm.

The issues presented on this appeal are (1) whether the trial court could properly have determined without abusing its discretion that the questions put to defendant could have had no tendency to incriminate him, and (2) whether defendant was adequately protected against self-incrimination by a constitutionally sufficient statutory grant of immunity.

The questions put to defendant were all innocuous on their face. In such circumstances, it becomes necessary to determine whether the questions might have elicited information which could have been used as evidence against defendant in the prosecution for a crime.

It is the essence of defendant's contention on appeal that a witness who in good faith claims the Fifth Amendment privilege is the sole judge of whether a question would tend to incriminate him and that requiring him to reveal to the court the extraneous facts which render a seemingly innocuous question incriminating would destroy the privilege. That is not the law. In fact, the trial court has relatively broad discretion to determine whether a question innocuous on its face could nevertheless have a tend-

ency to incriminate the witness. The scope of that discretion and the procedure to be employed by a court in exercising it were set forth by the United States Supreme Court in Hoffman v. United States, 341 U. S. 479, 486, 71 S. Ct. 814, 818, 95 L. ed. 1118, 1124 (1951), where the court said:

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a * * * crime. [Citation omitted.] But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. [Citation omitted.] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, [citation omitted] and to require him to answer if 'it clearly appears to the court that he is mistaken.' [Citation omitted.] However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' [Citation omitted.]"

See, also, Zicarelli v. New Jersey Investigation Comm. 406 U. S. 472, 92 S. Ct. 1670, 32 L. ed. 2d 234 (1972) ; United States v. Coffey, 198 F. 2d 438 (3 Cir. 1952) ; State v. Beery, 198 Minn. 550, 270 N. W. 600 (1936).

While both parties agree that Hoffman controls here, they would apply it to the facts of this case so as to reach opposite results. Plaintiff contends that none of the questions put to defendant could have possibly tended to incriminate him. Defendant claims that the trial court could not have been certain that he was mistaken in claiming his privilege.

We view the matter in a different light. The danger of responsive answers to many of the questions or an explanation of why they could not be answered is far from evident. For example, defendant was asked whether he had any bank accounts, whether he had so much as a dollar in cash, whether any persons owed him money, whether he had recently sold or purchased any real estate, whether he had engaged in conversations with certain persons regarding possible purchases or sales of real estate, whether he was acquainted with certain named persons, and whether he was currently employed. There is nothing in the record which would imply that responsive answers to these questions or an explanation of why they could not be answered would result in incriminating disclosures.

On the other hand, defendant was asked a number of questions as to whether he had recently sold any items of personal property and whether he currently owed certain pieces of farm machinery and certain crops. It must be borne in mind that the underlying litigation arose because plaintiff believed that its security interest in defendants' property had been impaired. Plaintiff's complaint alleged that a number of the cattle in which it had a security interest had died; that defendants had sold a large number of the cattle; that many of the items of machinery and equipment in which plaintiff had a security interest had been converted to defendants' own use; and that defendants had engaged in "[o]ther acts of fraud and misconduct" with "intent and purpose to defraud plaintiff." Under the circumstances, responsive answers to the questions described above might reveal

information which would form a link in the chain of evidence needed to convict him of the offense of selling mortgaged property.

As we do not hold that it was within the broad discretion of the trial court to determine that none of the questions put to defendant could have had a tendency to incriminate him, it is necessary to reach the question of whether defendant was protected by a statutory grant of immunity. If he was, then the trial court correctly ordered him to respond to counsel's questions.

To resolve this issue, it is necessary to consider two separate statutory provisions. Minn. St. 575.04 relates specifically to compelling testimony during proceedings supplementary to execution and provides in relevant part:

*"Upon appearing or being brought before the judge or referee,* the judgment debtor, or officer required to answer for a corporation, may be examined under oath, and witnesses may be required to appear and testify on behalf of either party, and the debtor may be represented by counsel; *and no person, on such examination, shall be excused from answering any question on the ground that his examination will tend to convict him of the commission of a fraud, but his answer shall not be used as evidence against him in any criminal proceeding."* (Italics supplied.)

Standing alone, this statute does not comply with the decisions of the United States Supreme Court as to the scope of immunity that must be granted a witness whose testimony is compelled. In Kastigar v. United States, 406 U. S. 441, 92 S. Ct. 1653, 32 L. ed. 2d 212 (1972), and Zicarelli v. New Jersey Investigation Comm. 406 U. S. 472, 92 S. Ct. 1670, 32 L. ed. 2d 234 (1972), the United States Supreme Court held that a statute granting both use and derivative use immunity to a witness whose testimony was to be compelled was coextensive with the Fifth Amendment privilege and thus constitutionally permissible. As Minn. St. 575.04 provides only use immunity, it would be inadequate to protect defendant.

The constitutional infirmity of Minn. St. 575.04 is cured by § 609.09, subd. 2, which provides in relevant part:

"In every case * * * in which it is provided by law that a witness shall not be excused from giving testimony tending to criminate himself, no person shall be excused from testifying or producing any papers or documents on the ground that his testimony may tend to criminate him or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter, or thing concerning which he shall so testify, except for perjury committed in such testimony."

Taken together with § 575.04, this section affords the witness whose testimony is compelled full transactional immunity, protecting him more fully than the Fifth Amendment requires.[5]

Despite the broad language of § 609.09, subd. 2, defendant contends that it would not adequately protect his Fifth Amendment right. He bases his argument upon the phrase "tend to convict him of the commission of a fraud" found in § 575.04, claiming that his testimony would not have tended to convict him of "fraud," but, rather, of selling property mortgaged to a Federal bank, Federal mail fraud, income tax evasion, theft, obtaining goods by the use of false credit methods, possession of stolen goods, and adultery. Thus, he argues, his testimony could not have properly been compelled. As § 609.09, subd. 2, operates only when testimony can be properly compelled under another statute, he claims it would not protect him.

We consider this argument to have no merit. Its basic flaw is that under Minnesota law there is no separate independent crime of "fraud." The Criminal Code, Minn. St. c. 609, contains no offense so labeled. We view fraud as a method of committing various crimes against property rather than as a specific crime.

[5] For other specific immunity statutes, the history of Minn. St. 609.09, and the relationship between § 609.09, subd. 2, and the specific statute, see Advisory Committee Comment, 40 M. S. A. p. 99.

Accordingly, we construe the phrase "commission of a fraud" as used in Minn. St. 575.04 to include all offenses committed by fraudulent means.

When Minn. St. 575.04 is so construed, it is apparent that the protection afforded defendant by that section and by § 609.09, subd. 2, was constitutionally sufficient. All of the offenses which defendant enumerated, except for adultery, would either necessarily or probably have been committed by fraudulent means. Adultery does not fall into this category. Unless some aspect of fraudulent conduct were intertwined with adultery, we cannot presume that plaintiff's counsel would inquire into that matter. Statutory immunity fully protected defendant.[6]

In summary, we hold that the trial court properly ordered defendant to answer the questions put to him by plaintiff's counsel. As defendant was protected by a statutory grant of transactional immunity[7] with respect to any offenses which might even argu-

---

[6] Although we find that Minn. St. 609.09, subd. 2, granted defendant transactional immunity, we note that defendant would have been constitutionally entitled to use and derivative use immunity even in the absence of any statutory protection. The United States Supreme Court has held that if a witness is ordered to answer questions without an express grant of immunity, he need not subject himself to a contempt sentence but may choose to answer and thus become entitled to immunity coextensive with the Fifth Amendment privilege. See, Lefkowitz v. Turley, 414 U. S. 70, 78, 94 S. Ct. 316, 322, 38 L. ed. 2d 274, 282 (1973), where the court said: "* * * [A] witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. [Citation omitted.] Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later prosecution."

[7] While it is true that the State of Minnesota has no power to immunize a person against Federal prosecution, the United States Supreme Court has held that the Federal government is prohibited from making any use of testimony which is compelled after a grant of immunity under state law. Murphy v. Waterfront Comm. 378 U. S. 52, 84

ably have been revealed by his testimony, we affirm the order finding defendant in direct civil contempt of court and sentencing him to 6 months in the Meeker County jail.

Prior to and at oral argument, it was disclosed that defendant failed to surrender himself to the Meeker County sheriff in order to serve the sentence imposed upon him by the trial court. His present whereabouts are unknown. Plaintiff urged this court to adopt the rule followed by certain jurisdictions that one who has disobeyed a court order may not obtain the benefits of judicial review of that order until he purges himself of his noncompliance and personally submits to the jurisdiction of the court. As we hold that the trial court properly held defendant in contempt, we need not decide this collateral issue.

Affirmed.

---

S. Ct. 1594, 12 L. ed. 2d 678 (1964). Thus, defendant would be entitled to use and derivative use immunity with respect to any Federal offenses which might be revealed by his compelled testimony.