**In the Matter of the WELFARE OF S.J.T.**

**No. A07–49.**

Court of Appeals of Minnesota.

July 31, 2007.

Sara K. Sorenson, Ohnstad Twichell, P.C., West Fargo, ND, for appellant S.J.T.

Brian Melton, Clay County Attorney, Jenel K. Wavra, Assistant County Attorney, Moorhead, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant S.J.T. challenges his certification as an adult on four counts of first-degree criminal sexual conduct arising from allegations regarding a number of nonconsensual sexual encounters between appellant and his adopted sister, arguing that (1) the Minnesota certification procedure violates the Fifth Amendment by requiring the juvenile to rebut a presumption of certification; (2) the Fifth Amendment precludes the district court from compelling the juvenile to submit certain information to the state; and (3) the district court abused its discretion by improperly weighing testimony, relying on police reports not in evidence, and concluding that appellant failed to rebut the presumption of certification.

## FACTS

Appellant S.J.T. challenges his certification as an adult for prosecution on four counts of first-degree criminal sexual conduct arising from allegations that he initiated numerous nonconsensual sexual

encounters with his adopted sister in approximately 2003. At the time, appellant was 16–17 years old and his sister was approximately 12 years old.

At the certification hearing, appellant produced an expert witness, Dr. Ascano, a psychologist who had reviewed documents, interviewed appellant, and administered psychological tests to appellant in order to prepare a psychosexual risk assessment. Respondent produced two expert witnesses: Dr. Hein–Kolo, a psychologist, and Tama Puhr, a probation officer who prepared appellant's certification study. Because appellant refused to meet with her, Dr. Hein–Kolo did not interview or evaluate appellant personally, but relied on reports prepared by others, including Dr. Ascano, in preparing her opinion. Ms. Puhr interviewed appellant twice and although appellant signed a release of information to obtain medical records, appellant subsequently revoked the release. On advice of counsel, appellant refused to provide Ms. Puhr with his version of the allegations.

Prior to the certification hearing, appellant filed a motion to dismiss, which the district court denied. Appellant requested, but was denied, a stay of proceedings while he appealed the denial of his motion to dismiss. The court of appeals affirmed the denial of the motion to stay proceedings pending appeal and denied discretionary review. Following a hearing, the district court granted certification.

## ISSUES

1. Does the Minnesota certification procedure violate the Fifth Amendment by requiring the juvenile to rebut a presumption of certification?

2. Does the Fifth Amendment preclude the district court from requiring the juvenile to submit certain information to the state?

3. Did the district court abuse its discretion by both admitting certain expert testimony into evidence and by according it too much weight?

4. Did the district court abuse its discretion by relying on police reports not in evidence?

5. Did the district court abuse its discretion by determining that appellant failed to rebut the presumption of certification?

## ANALYSIS

■ A district court has considerable latitude in deciding whether to certify, and this court will not upset its decision "unless its findings are clearly erroneous so as to constitute an abuse of discretion." *In re Welfare of J.L.B.*, 435 N.W.2d 595, 598 (Minn.App.1989), *review denied* (Minn. Mar. 17, 1989). For purposes of certification, the juvenile is presumed guilty of the alleged offenses. *Id.*

■ Certification is presumed for an offense committed by a juvenile if the child was 16 or 17 years old at the time of the offense and the delinquency petition alleges that the child committed an offense that would result in a presumptive commitment to prison under the sentencing guidelines and applicable statutes. Minn.Stat. § 260B.125, subd. 3 (2004). Thus, in presumptive-certification proceedings, the state bears the burden of showing that (1) the juvenile was 16 or 17 years old, and (2) the alleged offense carries a presumptive prison sentence. *Id.*

■ Once the state has met its burden, the juvenile may rebut the presumption of certification by "clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.* If the juvenile rebuts the presumption, the proceedings are retained in the juvenile

court system under extended jurisdiction juvenile (EJJ) proceedings. *Id.,* subd. 8 (2004). But if the juvenile fails to provide sufficient evidence to rebut the presumption, the matter must be certified. *Id.,* subd. 3.

When assessing whether public safety would be served by retaining proceedings in the juvenile system, courts must consider six statutory factors: (1) the seriousness of the offense; (2) the culpability of the child in committing the offense; (3) the child's prior record of delinquency; (4) the child's programming history; (5) the adequacy of punishment or programming available in the juvenile system; and (6) the dispositional options available for the child. *Id.,* subd. 4 (2004). The greatest weight must be placed on factor (1), the seriousness of the offense, and factor (3), the prior record of delinquency. *Id.*

## I.

▮▮▮ This court reviews the constitutionality of a statute de novo. *In re Welfare of J.C.P.,* 716 N.W.2d 664, 666 (Minn. App.2006), *review denied* (Minn. Oct. 17, 2006). "Minnesota law presumes that all statutes are constitutional and should be declared unconstitutional only if it is established beyond a reasonable doubt that they violate a constitutional provision." *In re Welfare of T.C.J.,* 689 N.W.2d 787, 795 (Minn.App.2004), *review denied* (Minn. Jan. 26, 2005).

▮▮▮ Appellant argues that the presumptive-certification proceeding violates his Fifth Amendment rights by requiring him to rebut the presumption of certification as an adult. The United States Supreme Court has held that "a juvenile [is] entitled to the protection of due process, including specifically the right to notice of the charges, to counsel, to confrontation and cross-examination and to the privilege against self-incrimination, and to appellate

review and a transcript of the proceedings." *In re Welfare of B.M.L.,* 553 N.W.2d 113, 114 (Minn.App.1996) (citing and quoting *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (citations omitted)). "[A]n order of certification is a pretrial determination that transfers jurisdiction from the juvenile court to the district court." *In re Welfare of J.C.P.,* 716 N.W.2d at 669 (citing Minn. Stat. § 260B.125, subd. 1 (2004), and *In re Welfare of L.J.S.,* 539 N.W.2d 408, 413 (Minn.App.1995) (noting that certification is a pretrial procedure that determines which court will try the juvenile), *review denied* (Minn. Jan. 25, 1996)). In other words, a juvenile certification procedure is not a dispositional procedure. But the United States Supreme Court has stated that "[t]he privilege [against self-incrimination] can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory.... [I]t protects any disclosures which the witnesses may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used." *Application of Gault,* 387 U.S. at 47–48, 87 S.Ct. at 1454 (quoting *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 94, 84 S.Ct. 1594, 1611, 12 L.Ed.2d 678 (1964)). Because the Fifth Amendment right against self-incrimination applies to all proceedings, civil or criminal, administrative or judicial, we conclude that it must necessarily apply to a juvenile certification procedure.

Having concluded that the Fifth Amendment applies to certification proceedings, we must now decide whether, as appellant alleges, a defendant's Fifth Amendment right against self-incrimination is violated by the presumptive-certification proceeding. Appellant argues that he suffered a penalty by choosing not to testify because, based on the presumption of certification,

his failure to testify precluded his ability to rebut the presumption and resulted in certification. Appellant alleges that in order to rebut a presumption that public safety is not best served by the juvenile's certification, the juvenile is essentially required to testify: "Under Minnesota's statutory scheme, S.J.T. had no means or opportunity of rebutting these alleged comments without potentially inculpating himself."

We note that we have already decided that the presumptive-certification proceeding does not violate a juvenile's Sixth Amendment rights or right to Due Process under the Fourteenth Amendment. We concluded that the presumptive-certification process does not conflict with the presumption of innocence, stating that "[t]he presumptive certification statute does not affect the state's burden of proving an *element* of the offense, and so does not conflict with the presumption of innocence." *In re Welfare of L.J.S.*, 539 N.W.2d 408, 413 (Minn.App.1995), *review denied* (Minn. Jan. 25, 1996). And we further concluded that the presumptive-certification statute does not improperly create an irrebuttable presumption: "The juvenile may rebut the presumption 'by demonstrating by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety.'" *Id.* Specifically, "[t]he statute [ ] allows the juvenile to present evidence going beyond those basic facts to the broader issue of whether public safety is served." *Id.*

Here, we are asked to analyze the presumptive-certification proceedings from a Fifth Amendment standpoint. We conclude, as in *L.J.S.*, that the proceedings are not unconstitutional. In a presumptive-certification procedure, the juvenile may present evidence regarding "the broader issue of whether public safety is served," *id.*, which includes expert testimony regarding each of the six public-safety factors. Because the child is presumed guilty of the charged offense, the issues the court decides during the certification proceeding are policy issues regarding the case against the juvenile and not the facts of the specific case. Although the juvenile may testify, he is not required to do so; whether the juvenile testifies is a tactical decision made by the juvenile and his attorney, not an evidentiary decision made by the court. Moreover, as discussed below, state and federal rules, statutes, and caselaw provide protection against self-incrimination for a juvenile who elects to testify.

■ We reject appellant's argument that the statute compels him to testify. Although a juvenile may testify, there is nothing in the statute that requires him to do so. Without the requirement to testify, we conclude that the fact that the presumptive-certification statute provides an opportunity for the juvenile to rebut a presumption of adult certification does not violate the juvenile's Fifth Amendment right against self-incrimination, either facially or as applied.

## II.

Appellant next argues that the presumptive-certification proceeding violates the Fifth Amendment, facially and as applied, by allowing the district court to compel a defendant to produce certain records without providing sufficient protection to the defendant for any incriminating statements that those records may contain.

First, we must decide whether Minn. R. Juv. Delinq. P. 18.03, subd. 1, which states that "[t]he court ... may order social, psychiatric, or psychological studies concerning the child who is the subject of the certification proceeding," compels testimony from the juvenile. Then, we must decide whether, if testimony is compelled, adequate protection is afforded a juvenile

against the use of the potentially self-incriminating statements. Finally, if the rules do not violate the Fifth Amendment, we must look at the disclosures ordered in this case and determine whether the district court abused its discretion by failing to comply with the rules.

### 1. Compelled Testimony

 The Fifth Amendment not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also permits him "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984) (quotation omitted). The "constitutional guarantee is only that the witness not be *compelled* to give self-incriminating testimony," *McKune v. Lile*, 536 U.S. 24, 36, 122 S.Ct. 2017, 2026, 153 L.Ed.2d 47 (2002) (quotation omitted), "of a communicative or testimonial nature." *State v. Bebel*, 383 N.W.2d 724, 726 (Minn. App.1986), *review denied* (Minn. May 22, 1986).

 As an initial matter, we conclude that a juvenile's participation in a court-ordered investigation or study is compelled because he has no option to refuse. "[T]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 189, 124 S.Ct. 2451, 2460, 159 L.Ed.2d 292 (2004) (quotation omitted). A juvenile's submission to psychological or other evaluations that require the juvenile's responses as part of the study produces testimonial evidence. Accordingly, we conclude that court-ordered submission of a juvenile to certification studies that require the juve-

nile's responses as part of the study fall within the Fifth Amendment's scope of compelled testimony.

### 2. Adequate Protection

 Next, we must decide whether adequate protections exist to permit the district court to compel a juvenile to comply with Minn. R. Juv. Delinq. P. 18.03, subd. 1, without violating the juvenile's Fifth Amendment right against self-incrimination. The Minnesota Supreme Court has cited the United States Supreme Court's holding that "a statute granting both use and derivative use immunity to a witness whose testimony was to be compelled was coextensive with the Fifth Amendment privilege and thus constitutionally permissible." *Prod. Credit Ass'n of Redwood Falls v. Good*, 303 Minn. 524, 530, 228 N.W.2d 574, 578 (1975); *see also State v. Nolan*, 231 Minn. 522, 529, 44 N.W.2d 66, 71 (1950) (quoting *Glickstein v. United States*, 222 U.S. 139, 141, 32 S.Ct. 71, 72–73, 56 L.Ed. 128 (1911)).

Here, specific and general protections against self-incrimination are in place in Minnesota rules and statutes. Minnesota Rule of Juvenile Delinquency Procedure 18.04, subdivision 5, provides that "[a]ny matters disclosed by the child to the examiner during the course of the study may not be used as evidence or the source of evidence against the child in any subsequent trial." And the Minnesota Supreme Court has determined that Minnesota Statute § 609.09 grants Fifth Amendment compliant immunity against use of compelled testimony against the witness from whom it was compelled in any criminal proceeding. *Good*, 303 Minn. at 530, 228 N.W.2d at 578. Minnesota Statute § 609.09, subdivisions 1 and 2 (2004), provide additional protection. Subdivision 1 states:

In any criminal proceeding, including a grand jury proceeding, paternity proceeding, or proceeding in juvenile court, if it appears a person may be entitled to refuse to answer a question or produce evidence of any other kind on the ground that the person may be incriminated thereby, and if the prosecuting attorney, in writing, requests the chief judge of the district or a judge of the court in which the proceeding is pending to order that person to answer the question or produce the evidence, the judge, after notice to the witness and hearing, shall so order if the judge finds that to do so would not be contrary to the public interest and would not be likely to expose the witness to prosecution in another state or in the federal courts.

After complying, and if, but for this section, the witness would have been privileged to withhold the answer given or the evidence produced by the witness, no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case, but the witness may be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or in failing to answer, or in producing, or failing to produce, evidence in accordance with the order.

Subdivision 2 provides further assurances of immunity:

In every case not provided for in subdivision 1 and in which it is provided by law that a witness shall not be excused from giving testimony tending to be self-incriminating, no person shall be excused from testifying or producing any papers or documents on the ground that doing so may tend to criminate the person or subject the person to a penalty or forfeiture; but no testimony or other information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case, except for perjury committed in such testimony.

Minn.Stat. § 609.09, subd. 2. Furthermore, the Minnesota Supreme Court has stated:

Although we find that Minn.Stat. [§ ] 609.09, subd. 2, granted defendant transactional immunity, we note that defendant would have been constitutionally entitled to use and derivative use immunity even in the absence of any statutory protection. The United States Supreme Court has held that if a witness is ordered to answer questions without an express grant of immunity, he need not subject himself to a contempt sentence but may choose to answer and thus become entitled to immunity coextensive with the Fifth Amendment privilege.

*Good,* 303 Minn. at 532 n. 6, 228 N.W.2d at 579 n. 6 (citing *Lefkowitz v. Turley,* 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973)).

We conclude that any use of appellant's compelled statements against him in a criminal case is precluded either by Minn. R. Juv. Delinq. P. 18.04, subd. 5, Minn. Stat. § 609.09, *Lefkowitz,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274, or *Murphy,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. Accordingly, we conclude that the presumptive-certification proceeding does not violate the Fifth Amendment by providing inadequate protections against the further use of appellant's compelled testimony, including studies compelled by the court.

### 3. Application Here

■ "[W]hether the [district] court violated [a witness's] Fifth Amendment privilege against self-incrimination is a question of law which this court reviews de novo." *In re Contempt of Ecklund,* 636 N.W.2d

585, 587 (Minn.App.2001) (quoting *State v. Kaquatosh,* 600 N.W.2d 153, 156 (Minn. App.1999), *review denied* (Minn. Dec. 14, 1999)).

■ Here, appellant alleges that the district court ordered appellant to release his medical records to the state. Although medical records are not specifically referenced in rule 18.03, subdivision 1, the nature of the requested evidence falls within the scope of the rule. And because the district court compelled the juvenile to provide the evidence, the information provided is therefore immune from use in appellant's criminal proceeding.

The compelled nature of the evidence also brings the records under the purview of Minn.Stat. § 609.09, subd. 2, which precludes use of the records or information uncovered through the records against the juvenile in the criminal proceeding. Although only self-incriminating evidence may be protected, *In re Welfare of J.W.,* 415 N.W.2d 879, 883 (Minn.1987), that is the evidence appellant is concerned about. Finally, as discussed above, *Lefkowitz,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274, and *Murphy,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, provide appellant additional protection against self-incrimination.

We conclude that the district court did not abuse its discretion by requiring that appellant's medical records be turned over to the state and that such disclosure does not violate the Fifth Amendment because, as compelled testimony, appellant is provided adequate protection against further use of the evidence in a criminal proceeding.

### III.

■ Appellant argues that testimony from respondent's two experts was erroneously admitted and relied on by the district court. "Expert testimony is admissible if it will assist the trier of fact in evaluating evidence or resolving factual issues." *State v. Crow,* 730 N.W.2d 272, 279 (Minn.2007). "A qualified expert may testify in the form of an opinion if the expert's 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Minn. R. Evid. 702). "The opinion, however, 'must have foundational reliability.'" *Id.* (quoting *State v. Blanche,* 696 N.W.2d 351, 372 (Minn.2005)).

■ First, appellant argues that the testimony of the state's expert, Dr. Hein–Kolo, lacked foundation because she did not interview or personally examine appellant. Appellant cites *Peterson v. Peterson,* 408 N.W.2d 901, 904 (Minn.App.1987), in support of his argument that personal interviews must be conducted before an expert may render an opinion. In *Peterson,* a father attempted to introduce expert testimony regarding a custody case, but the expert had not spoken to the mother or the child and based its recommendations on the father's statements only. 408 N.W.2d at 904.

Here, the record indicates that Dr. Hein–Kolo is a Ph.D. clinical psychologist, who has been licensed in the State of Minnesota for almost 12 years, and has performed approximately 50 sex offender evaluations. The record further indicates that Dr. Hein–Kolo's testimony was not based solely on information received from respondent, as was the case in *Peterson.* Rather, Dr. Hein–Kolo reviewed investigative reports that contained statements from both appellant and the victim, relied on a sex offender evaluation performed by appellant's expert, and reviewed the Petition for Certification.

Dr. Hein–Kolo testified about general treatment programs and time requirements for sexual offenders and, based on

her review of the documents, the seriousness of the crime and the adequacy of treatment in the EJJ system. Although the state elicited generalized responses from Dr. Hein–Kolo, she also testified regarding specific admissions or statements in the documents that she had reviewed and her perspective on the effect the truth of such statements would have on treatment. For example, when asked about appellant's likelihood of recidivism, she cited the allegations from the documents that she deemed relevant to the issue of recidivism. She also assessed appellant's likelihood of recidivism based on her evaluation of appellant's statements and cited clinical studies to support her assessment.

■■■■ Appellant provides no legal support for his assertion that a clinical psychologist cannot provide expert testimony in a certification hearing without having personally interviewed the witness. Furthermore, the record indicates that the reason that Dr. Hein–Kolo did not interview appellant is that appellant refused to speak with her. The district court has wide discretion whether to admit expert testimony, *Crow,* 730 N.W.2d at 279. Thus, we cannot conclude that in light of appellant's refusal to cooperate with the witness, it was an abuse of discretion for the district court not to have precluded the witness from testifying. The basis of an expert's testimony is appropriately considered in the weight to give the testimony. And weight and credibility issues are within the province of the fact-finder. *Tsudek v. Target Stores, Inc.,* 414 N.W.2d 466, 469 (Minn.App.1987), *review denied* (Minn. Dec. 13, 1987). We conclude that the district court did not abuse its discretion by admitting and crediting the testimony of Dr. Hein–Kolo.

■■■■ Appellant also argues that Tama Puhr was not qualified to conduct a certification study, testified without relying on psychological data, and recommended certification even though appellant had no history of misconduct. But appellant did not object to Ms. Puhr's qualifications or the foundation of her report at the hearing and we decline to address the objections for the first time here. *Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996).

### IV.

■■■■ Appellant argues that the district court impermissibly considered police reports not in evidence. But the specific statement that appellant challenges, that appellant may have had inappropriate sexual contact with another sister, was referenced by a witness during the hearing. Appellant has not shown that the district court considered information or reports not in evidence.

In addition, even if the district court erred by considering information not in evidence, appellant must show that the error was prejudicial. *Bernhardt v. State,* 684 N.W.2d 465, 475 (Minn.2004). Here, although appellant notes that the police report contained an allegation that appellant may have had inappropriate sexual contact with another sister, he does not explain how this allegation was used in the certification proceeding. The district court's conclusions of law, which detail its analysis regarding the public-safety factors, do not refer to another possible victim. And because, as discussed below, the district court adequately concluded that appellant failed to rebut the presumption of certification without reference to the complained-of allegation, appellant has failed to show that the district court's consideration of any matters not in evidence resulted in prejudice.

### V.

A district court has considerable latitude in deciding whether to certify, and this

court will not upset its decision "unless its findings are clearly erroneous so as to constitute an abuse of discretion." *In re Welfare of J.L.B.*, 435 N.W.2d at 598. For purposes of certification, the juvenile is presumed guilty of the alleged offenses. *Id.*

Certification is presumed for an offense committed by a juvenile if the child was 16 or 17 years old at the time of the offense and the delinquency petition alleges that the child committed an offense that would result in a presumptive commitment to prison under the sentencing guidelines and applicable statutes. Minn.Stat. § 260B.125, subd. 3. Here, appellant was 16–17 when he allegedly committed a crime and the crime, first-degree criminal sexual conduct, carries a presumptive prison sentence of 144 months. Therefore, certification is presumed.

The juvenile may rebut the presumption of certification by "clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.* If the juvenile rebuts the presumption, the proceedings are retained in the juvenile court system under EJJ. *Id.*, subd. 8. But if the juvenile fails to provide sufficient evidence to rebut the presumption, the matter must be certified. *Id.*, subd. 3. Appellant argues that the district court abused its discretion by concluding that appellant failed to rebut the presumption of certification.

When assessing whether public safety would be served by retaining proceedings in the juvenile system, courts must consider six statutory factors: (1) the seriousness of the offense; (2) the culpability of the child in committing the offense; (3) the child's prior record of delinquency; (4) the child's programming history; (5) the adequacy of punishment or programming available in the juvenile system; and (6) the dispositional options available for the

child. *Id.*, subd. 4. The greatest weight must be placed on factor (1), the seriousness of the offense, and factor (3), the prior record of delinquency. *Id.* Here, the district court addressed each factor in its decision.

**1. Seriousness of the Offense**

In assessing the seriousness of the offense, courts are to consider any aggravating factors and the impact on the victim. *Id.*, subd. 4(1); *In re Welfare of U.S.*, 612 N.W.2d at 195. Here, the district court concluded that the charged offenses are "very serious." The petition for certification, the charges of which are presumed to be true, *In re Welfare of J.L.B.*, 435 N.W.2d at 598, states that appellant had intercourse with the victim "too many times to count," beginning when the victim was approximately 11 years old and ending when she was approximately 13 years old. The victim experienced pain and bleeding; appellant allegedly held his hand over her mouth and threatened to hurt her if she told anyone. The district court stated that:

> It is particularly significant that the Juvenile's conduct is alleged to have occurred on numerous occasions over the course of several years, and that the Juvenile was so blinded by denial that he believed [the victim] enjoyed being violated. It is concerning that the Juvenile is alleged to have used threats, intimidation, and force to accomplish his abusive behavior. In addition, the Court finds it significant that the Juvenile is several years older than [the victim] and was in a position of influence as [the victim's] older brother. There was very little testimony on victim impact in this case. However, the Petition reflects that the police first became aware of the situation because [the victim] began to experience behavioral problems,

and it was determined that she needed therapy. The Juvenile's conduct has clearly affected not only [the victim], but the entire family. In conclusion, the Court finds that the first factor weighs in favor of certification.

The record supports the district court's conclusion.

### 2. Culpability

The district court found appellant culpable, noting that he "committed the offense on his own, without the participation or help of others" and "used threats, intimidation, and force." The district court also determined that the mitigating factors under the sentencing guidelines are inapplicable in this case. We conclude that the district court properly determined that the culpability factor weighs in favor of certification.

### 3. Prior Delinquency Record

The parties agree that because appellant had no prior delinquency record, this factor weighs against certification.

### 4. Programming History

The parties agree that appellant had no prior programming history, weighing against certification.

### 5. Adequacy of Punishment or Programming and Dispositional Options Available

Under EJJ, the juvenile court retains jurisdiction over certain offenders until they reach the age of 21. Minn.Stat. § 260B.193, subd. 5(b) (2004). The juvenile court imposes a juvenile disposition and a stayed adult disposition, which is imposed only if the juvenile fails to comply with the juvenile disposition or commits any new offenses. Minn.Stat. § 260B.130 (2004). Because appellant turned 19 years old on July 15, 2006, appellant would remain under EJJ jurisdiction for less than two years at the time of certification. Alternatively, the presumptive adult sentence is 144 months. Insufficient time for rehabilitation under the juvenile system is an appropriate consideration when determining whether to certify a juvenile. *In re Welfare of U.S.*, 612 N.W.2d at 197.

In addition, the experts testified that, if the state's allegations were true, the EJJ system was inadequate for treating or punishing appellant. The district court concluded:

> The Court finds it likely that the Juvenile will need rehabilitative therapy for an extended period of time if he is found guilty of the alleged offense. In addition, the Court has grave concerns that the EJJ system will not allow for enough time to provide the Juvenile with the treatment he needs. In light of the serious nature of the alleged offense, the Court also believes the EJJ system will not provide an adequate punishment for the Juvenile. The Court concludes that the last two public safety factors weigh in favor of certification.

We conclude that the district court properly determined that four of the six factors favored certification, including one of the factors that is statutorily prescribed to receive greater weight.

Appellant argues that because all the experts testified that he has a low likelihood of recidivism, he is not in need of treatment. He further contends that since he is unlikely to reoffend he is not a risk to public safety and this alone should outweigh the district court's evaluation of the statutory factors. But the likelihood that a juvenile will reoffend is not specifically listed as a factor to consider in deciding whether public safety is served by retaining appellant in the juvenile system. Here, the record indicates that the district court properly evaluated the statutorily

prescribed factors. And it is not the province of this court to create law, but rather to interpret legislation. *Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) (stating that a change in a statute must come from the legislature). Thus, we decline appellant's invitation to deviate from the plain language of the statute and create a new standard by which to evaluate a juvenile's threat to public safety.

We conclude that the district court did not clearly err in its findings or abuse its discretion in its conclusion that appellant failed to establish that retaining appellant in the juvenile court serves public safety.

## DECISION

The Fifth Amendment right against self-incrimination applies to the juvenile certification procedure, but the presumptive-certification statute does not violate this right, either facially or as applied, by providing an opportunity for the juvenile to rebut a presumption of adult certification. A court-ordered requirement that a juvenile submit to certification studies that require the juvenile's responses falls within the Fifth Amendment's scope of compelled testimony, but such testimony is protected against further use in a criminal proceeding by Minnesota and federal rules, statutes, and caselaw. The district court did not abuse its discretion by ordering appellant to submit his medical records to the state because the compelled testimony contained therein is afforded adequate immunity from further use.

The district court has broad discretion whether to admit expert testimony and appellant's refusal to cooperate with the expert witness's investigation does not preclude the witness from testifying.

On this record we conclude that the district court did not clearly err or abuse its discretion by determining that appellant failed to establish that retaining appellant in the juvenile court serves public safety and by certifying appellant as an adult for further criminal proceedings.

**Affirmed.**