*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1886**

Mohrman, Kaardal & Erickson, P. A., f/k/a Mohrman & Kaardal, P. A.,
Respondent,

vs.

Gene Rechtzigel,
Appellant,

Gene Rechtzigel as Personal Representative for
Estate of Frank H. Rechtzigel and as Trustee of any Trust thereunder, et al.,
Defendants.

**Filed August 22, 2016
Affirmed
Hooten, Judge**

Dakota County District Court
File No. 19HA-CV-13-4181

William F. Mohrman, James R. Magnuson, Mohrman, Kaardal & Erickson, P.A.,
Minneapolis, Minnesota (for respondent)

Gene Rechtzigel, Apple Valley, Minnesota (pro se appellant)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten,

Judge.

**UNPUBLISHED OPINION**

**HOOTEN**, Judge

Pro se appellant challenges the district court's final contempt order arising out of appellant's failure to comply with post-judgment discovery requests. We affirm.

**FACTS**

From 2000 to 2013, respondent Mohrman, Kaardal & Erickson, P.A., provided legal services to appellant Gene Rechtzigel in a range of matters. *Mohrman & Kaardal, P.A. v. Rechtzigel*, No. A14-1499, 2015 WL 4714883, at *1 (Minn. App. Aug. 10, 2015), *review denied* (Minn. Oct. 28, 2015), *cert. denied*, 136 S. Ct. 1468 (2016). In October 2013, respondent sued appellant and other defendants after they failed to pay attorney fees for services rendered, alleging claims of breach of contract, unjust enrichment, account stated, and attorney lien for compensation. *Id.* at *2. In May 2014, the district court granted respondent's motion for summary judgment on the account stated and breach of contract claims. *See id.* at *4. The district court entered judgments against appellant and his codefendants in amounts totaling $184,890.99 plus interest. On appeal, this court affirmed the district court's grant of summary judgment. *Id.* at *5–7. Both the Minnesota Supreme Court and the United States Supreme Court denied review.

On January 14, 2015, respondent served appellant with post-judgment discovery requests related to the May 2014 judgments. Specifically, respondent sought full disclosure of the assets of appellant and the other judgment debtors so that respondent could collect on its judgments. After appellant did not comply with the requests, respondent moved to compel post-judgment discovery, and the district court granted the

2

motion. Appellant still did not respond to respondent's discovery requests, and respondent moved for an order to show cause. The district court held a hearing on respondent's discovery motion, and on August 20, 2015, the district court filed an order holding appellant in contempt of court for his failure to respond. On September 4, 2015, appellant served upon respondent his response to the discovery requests, which consisted of objections generally based upon the Constitution, including the Fifth Amendment privilege.

Respondent subsequently moved to enforce the August 20, 2015 contempt order, and the district court conducted a hearing on respondent's motion. At the hearing, appellant did not elaborate on the basis of his Fifth Amendment objection to respondent's discovery requests other than to state that it involved an incident in which respondent previously represented him and his co-defendants. On September 28, 2015, the district court filed an order, finding that appellant's objections to the post-judgment discovery were untimely and without merit and ordering appellant to respond to the requests by October 2, 2015. However, the district court indicated that it would stay appellant's obligation to comply with post-judgment discovery if appellant posted "a supersedeas bond in the amount of 120% of the original judgment . . . in a form acceptable to [respondent] and filed [it] with the [c]ourt." On October 9, 2015, respondent's attorney filed an affidavit, stating that appellant had not provided the discovery and had not posted a supersedeas bond.

On October 21, 2015, the district court conducted an order to show cause hearing. Appellant declined to provide sworn testimony as to his alleged inability to comply with the discovery orders, although he offered the testimony of a witness who claimed that

3

appellant was having problems with receiving mail. The district court filed a final contempt order the same day, finding that appellant "ha[d] not complied with the [c]ontempt [o]rder requiring that he produce responses to [respondent's] discovery requests and that he had the ability to do so." The district court also found that incarceration was likely to produce compliance with the contempt order. The district court ordered appellant to be incarcerated for up to 180 days due to his failure to comply with the August 20, 2015 contempt order, unless he met one of the following purge conditions:

> a. [Respondent's] notification to the [c]ourt that [appellant] has fully responded to [respondent's] discovery requests. Fully responding for purposes of purging this [o]rder for [c]ontempt means full disclosure of the assets of each of the [j]udgment [d]ebtors, which includes, without limitation, disclosure of . . . bank account numbers, locations of investment accounts, addresses and legal descriptions of all real property and descriptions of all personal property with a purchase price in excess of three thousand dollars and production of all of the documents in the possession or control of [j]udgment [d]ebtors associated with these assets, including, but not limited to, lease agreements for all real property any [j]udgment [d]ebtor owns; or
> b. Posting a supersedeas bond in the amount of 120% of the original judgment amount; or
> c. Posting a cashier's check payable to the Dakota County Court Administrator in the sum of 120% of the original judgment amount which will be held pending [appellant's] appeal to the Minnesota Supreme Court; or
> d. Full satisfaction of the judgment[s].

Appellant filed this appeal on November 20, 2015. This court subsequently issued a special term order clarifying that the appeal is limited to the contempt proceedings. Respondents moved to dismiss the appeal, arguing that the appeal is moot because appellant purged the contempt and was released from custody and that the appeal is

4

palpably frivolous and without merit. [1] This court issued a special term order denying the motion to dismiss on the basis that an involuntary purging of contempt generally does not prohibit a party from appealing the order.

## DECISION

Appellant raises several challenges to the contempt proceedings as well as to the underlying May 2014 judgment.

**Appellant's challenges to the May 2014 judgment are not properly before this court.**

Appellant asks this court to review "in the interests of justice" the district court's May 2014 grant of summary judgment on behalf of respondent. But, we have already reviewed this judgment, and petitions for review to the Minnesota Supreme Court and the United States Supreme Court have been denied. Moreover, our first special term order clarified that only the contempt proceedings are within the scope of this appeal.

Appellant argues that the district court lacked subject matter jurisdiction to compel post-judgment discovery and to hold him in contempt, but this argument also relates to the May 2014 judgment. We note that, as a court of general jurisdiction, the district court had subject matter jurisdiction over respondent's account stated and breach of contract and claims. *See Anderson v. County of Lyon*, 784 N.W.2d 77, 80 (Minn. App. 2010) ("A district court is a court of general jurisdiction that has, with limited exceptions, the power to hear all types of civil cases."), *review denied* (Minn. Aug. 24, 2010). Because the district court

---

[1] In a December 30, 2015 order, the district court stated that appellant had "purged the contempt and secured his release from the contempt sentence by posting the sum of $256,000.00 with the Dakota County Court Administrator." In the same order, the district court granted respondent's request to release the funds in order to satisfy the judgments.

had subject matter jurisdiction over the underlying claims, it also had subject matter jurisdiction over the post-judgment discovery proceedings in order for respondent to enforce its judgment against appellant and his codefendants.

**Respondent did not waive its right to post-judgment discovery.**

Appellant argues that, by "us[ing] unripe summary judgment to deny appellant the right to discovery," respondent waived its right to post-judgment discovery. But, respondent's right to post-judgment discovery has nothing to do with the fact that respondent moved for summary judgment in the underlying action or that appellant did not conduct discovery in the underlying action. *See* Minn. R. Civ. P. 69 (providing that judgment creditor may obtain post-judgment discovery "[i]n aid of the judgment or execution"). Appellant also claims that he and his codefendants "were denied sufficient time for discovery," but this is yet another collateral attack on the May 2014 judgment and is thus not within the scope of this appeal.

**Appellant has not shown that respondent's post-judgment discovery request violated Minn. R. Civ. P. 69.**

Appellant argues that the proceedings are "null and void" because respondent served its post-judgment discovery request upon appellant and his codefendants before the judgments were docketed, in violation of Minn. R. Civ. P. 69. But, nothing in the text of the rule mandates that post-judgment discovery is void if conducted prior to the docketing of a judgment. *See* Minn. R. Civ. P. 69 ("In aid of the judgment or execution, the judgment creditor, or successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided by these rules.").

6

And, appellant has cited no Minnesota case providing that post-judgment discovery is void prior to docketing of a judgment. In the absence of any controlling authority, we reject appellant's claim. *See Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) ("[T]he burden of showing error rests upon the one who relies upon it.").

**The district court did not abuse its discretion by awarding respondent $1,500 in attorney fees in the August 20, 2015 contempt order.**

Appellant argues that the district court abused its discretion by awarding respondent attorney fees totaling $1,500 in its August 20, 2015 order. The district court had previously awarded respondent $750 in attorney fees in its May 11, 2015 order granting respondent's motion to compel post-judgment discovery and awarded respondent an additional $750 in attorney fees in the August 20, 2015 contempt order. We review an award of attorney fees for an abuse of discretion. *County of Scott v. Johnston*, 841 N.W.2d 357, 361 (Minn. App. 2013).

The district court did not abuse its discretion by awarding respondent $750 in attorney fees in connection with the motion to compel. Under the rules of civil procedure, if a motion to compel discovery is granted, the district court "shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney fees." Minn. R. Civ. P. 37.01(d)(1); *see Bowman v. Bowman*, 493 N.W.2d 141, 143, 145 (Minn. App. 1992) (holding attorney fee award was justified under rule 37.01 where appellant was held in contempt of court due to witness's failure to testify at

deposition and produce documents). Because appellant's conduct of failing to respond to respondent's post-judgment discovery request necessitated respondent's motion to compel, an attorney fee award is appropriate. In its motion to compel, respondent requested $750 in attorney fees. We conclude that, under these circumstances, this award is reasonable.

In its proposed order for contempt, respondent requested an additional $750 in attorney fees, and the district court awarded respondent fees in this amount in the August 20, 2015 order. Minn. Stat. § 588.11 (2014) provides:

> If any actual loss or injury to a party in an action or special proceeding, prejudicial to the person's right therein, is caused by such contempt, the court or officer, in addition to the fine or imprisonment imposed therefor, may order the person guilty of the contempt to pay the party aggrieved a sum of money sufficient to indemnify the party and satisfy the party's costs and expenses, including a reasonable attorney's fee incurred in the prosecution of such contempt, which order, and the acceptance of money thereunder, shall be a bar to an action for such loss and injury.

Three factors must be satisfied to sustain an award of attorney fees under section 588.11: "First, the fees must be based on proof of actual damages. Second, the award must not penalize the contemnor. Finally, the party receiving the fees must actually incur the fees." *Hanson v. Thom*, 636 N.W.2d 591, 593 (Minn. App. 2001) (citations omitted).

Applying the factors from *Hanson*, we conclude that the district court did not abuse its discretion by ordering this additional attorney fee award. The record contains evidence of the hourly rate of respondent's counsel from the underlying proceeding, and the district court was aware of this evidence. The award does not penalize appellant, and respondent clearly incurred attorney fees by bringing its motion to show cause and by having counsel

8

appear at the order to show cause hearing. We conclude that, on this record, the district court's award of an additional $750 is reasonable.

**Contempt was an available remedy.**

Appellant argues that respondent's only available remedy to collect on its judgments was execution, not contempt, citing Minn. Stat. § 550.02 (2014), which provides:

> Where a judgment requires the payment of money, or the delivery of real or personal property, it may be enforced in those respects by execution. Where it requires the performance of any other act, a certified copy of the judgment may be served upon the party against whom it is given, or the person or officer who is required thereby or by law to obey the same. A person so served who refuses may be punished by the court as for contempt, and the individual's obedience thereto enforced.

Section 550.02 gives the district court the authority to hold a person in contempt for failing to comply with a non-money judgment. But, appellant has cited no relevant authority indicating that this statute prevents a district court from exercising its inherent contempt powers in cases, such as this one, involving the failure to comply with post-judgment discovery that the district court orders in connection with a money judgment. *See State by Johnson v. Sports & Health Club, Inc.*, 392 N.W.2d 329, 336 (Minn. App. 1986) ("The power to punish for contempt is an inherent power of constitutionally created courts in Minnesota."), *review denied* (Minn. Sept. 24, 1986); *see also Erickson v. Erickson*, 385 N.W.2d 301, 304 (Minn. 1986) ("The purpose of the contempt power is to provide the [district] court with the means to enforce its orders. This power gives the [district] court inherently broad discretion to hold an individual in contempt but only where the contemnor has acted contumaciously, in bad faith, and out of disrespect for the judicial process."

(quotation and citation omitted)). Appellant has not shown that contempt was an unavailable remedy.

**The district court held appellant in civil, not criminal, contempt.**

Appellant argues that the district court improperly imprisoned him for debt and that the district court held him in criminal contempt. These contentions are without merit. First, appellant was not imprisoned for debt; he was jailed for not complying with the August 20, 2015 contempt order. As the district court stated during a September 2015 hearing, "[T]he contempt isn't because you haven't paid the judgment. . . . The contempt has to do with the fact that you failed to produce the discovery requested."

Second, as to the nature of the contempt, appellate courts look to the district court's "purpose in sanctioning the contemnor" to determine whether contempt is civil or criminal. *State v. Martin*, 555 N.W.2d 899, 900 (Minn. 1996). Criminal contempt is designed to punish past misconduct, *id.*, while "[c]ivil contempt sanctions are intended to operate in a prospective manner and are designed to compel future compliance with a court order," *Mower Cty. Human Servs. v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996) (quotation omitted). The civil form of the underlying proceeding and the contempt order's use of a "purge provision" are two indications that a contempt order is civil, not criminal. *Id.* A contempt order that includes a determinate jail sentence is civil in nature if accompanied by a purge clause. *See id.* In its October 21, 2015 final contempt order, the district court clearly held appellant in civil contempt. The underlying proceedings were civil in nature, the contempt order was designed to secure compliance with the district court's post-judgment discovery order, and the contempt order contained purge conditions.

**The district court did not abuse its discretion by holding appellant in civil contempt.**

Appellant argues that the district court abused its discretion by holding him in contempt. "The district court's decision to invoke its contempt powers is subject to reversal for abuse of discretion." *In re Welfare of Children of J.B.*, 782 N.W.2d 535, 538 (Minn. 2010). Appellate courts will uphold the findings of fact in a civil contempt order unless the findings are clearly erroneous. *Id.*

"Civil contempt is failing to obey a court order in favor of the opposing party in a civil proceeding." *Newstrand v. Arend*, 869 N.W.2d 681, 692 (Minn. App. 2015) (alteration omitted) (quotation omitted), *review denied* (Minn. Dec. 15, 2015).

> [A] civil contempt proceeding must meet the following minimum requirements:
> (1) the court has jurisdiction over the subject matter and the person;
> (2) a clear definition of the acts to be performed;
> (3) notice of the acts to be performed and a reasonable time within which to comply;
> (4) an application by the party seeking enforcement giving specific grounds for complaint;
> (5) a hearing, after due notice, to give the nonperforming party an opportunity to show compliance or the reasons for failure;
> (6) a formal determination by the court of failure to comply and, if so, whether conditional confinement will aid compliance;
> (7) an opportunity for the nonperforming party to show inability to comply despite a good faith effort; and
> (8) the contemnor's ability to gain release through compliance or a good faith effort to comply.

*Mower Cty.*, 551 N.W.2d at 223 (quotation omitted).

11

**Finding of contempt**

Here, as discussed above, the district court had subject matter jurisdiction. In its May 11, 2015 order, the district court granted respondent's motion to compel answers to post-judgment discovery. In its August 20, 2015 order, the district court found that appellant had violated the May 11, 2015 order by failing to answer the discovery.

Appellant argues that this finding is clearly erroneous because he responded to the discovery request by asserting the Fifth Amendment privilege.

> In civil cases, the right to plead the Fifth Amendment is not absolute. The availability of the right is delineated by the Fifth Amendment's prohibition against compulsed testimony in criminal cases. The Fifth Amendment, therefore, may only be invoked when testimony in a civil case would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger.

*Parker v. Hennepin Cty. Dist. Court, Fourth Judicial Dist.*, 285 N.W.2d 81, 83 (Minn. 1979) (emphasis omitted). The Fifth Amendment privilege "is properly invoked when the testimony or papers sought would tend to incriminate the witness." *Minn. State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 278, 248 N.W.2d 733, 737 (1976). The protection offered by the Fifth Amendment privilege "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Prod. Credit Ass'n of Redwood Falls v. Good*, 303 Minn. 524, 528, 228 N.W.2d 574, 577 (1975) (quotation omitted). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* (quotation omitted). The court determines whether the Fifth

12

Amendment privilege applies, and "[t]he witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Id.* (quotation omitted). The district court "has relatively broad discretion to determine whether a question innocuous on its face could nevertheless have a tendency to incriminate the witness." *Id.* at 527–28, 228 N.W.2d at 577.

Appellant's argument fails because there is nothing in the record that would indicate that responsive answers to these questions or an explanation of why the questions could not be answered would result in incriminating disclosures. Respondent's post-judgment discovery request simply called for answers to interrogatories and production of documents related to appellant's and his codefendants' accounts and other financial assets. Appellant has provided no indication of how his response to the discovery request would incriminate him. Appellant stated that he was invoking his Fifth Amendment right because he felt "very fearful and threatened by [respondent] creating false criminal charges against [him]," and because he had "great fear for the safety of [appellant's life], private information and honor from being slandered and damaged maliciously." These general conclusory statements, indicating only appellant's fear of respondent somehow "creating" a criminal prosecution and fear of noncriminal consequences, do not provide any indication that requiring appellant to respond to the discovery request would expose him to criminal prosecution. *See United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) ("To the extent that [the defendant] vaguely contends that any sort of response to the [g]overnment's post-judgment discovery requests might tend to incriminate him, his blanket assertion of a

13

Fifth Amendment privilege is impermissible, and he has failed to demonstrate a real danger of incrimination if he were to respond to any particular discovery request." (alterations omitted) (quotations omitted)). And, "the privilege does not extend to consequences of a noncriminal nature, such as threats of liability in civil suits, disgrace in the community, or the loss of employment." *United States v. Apfelbaum*, 445 U.S. 115, 125, 100 S. Ct. 948, 954 (1980).

Indeed, allowing appellant to invoke the Fifth Amendment here, where there is no indication that the requested discovery would expose him to criminal liability, would permit appellant to gain an unfair advantage, especially since, in civil litigation, the plaintiff's only source of evidence is often the defendant himself. *See Parker*, 285 N.W.2d at 83. While the Minnesota Supreme Court has stated that the right to invoke the Fifth Amendment exists in civil cases, it has cautioned that "[t]he interdiction of this constitutional safeguard in civil cases must be balanced against the purposes and policies supporting the discovery rules." *Id.* Allowing appellant to assert the Fifth Amendment privilege here would allow appellant to circumvent the discovery rules and unfairly hinder respondent's attempts to satisfy its judgments.

Accordingly, we conclude that the district court was within its relatively broad discretion by finding that appellant had no adequate basis for his failure to respond to respondent's discovery request and that he violated the May 11, 2015 order granting respondent's motion to compel discovery. The district court did not abuse its discretion by holding appellant in contempt.

**Sanction for contempt**

After appellant failed to comply with the May 11, 2015 order, respondent moved for an order to show cause, and a hearing was held on the motion. In the August 20, 2015 contempt order that followed, the district court gave appellant the opportunity to purge the contempt "by fully responding to [respondent's] interrogatories and document requests . . . within [15] days of the date of this [o]rder." Appellant purported to respond to the discovery order by asserting the Fifth Amendment privilege, as discussed above, and respondent subsequently moved to enforce the August 20, 2015 order. The district court afforded appellant another opportunity to explain his failure to comply with the discovery orders, but appellant could not elaborate on the basis of his Fifth Amendment objection. On October 21, 2015, the district court held an order to show cause hearing, where appellant was given yet another chance to explain why he should not be held in contempt. The district court found that appellant had not complied with the contempt order, that he had the ability to do so, and that incarceration was likely to produce compliance. The same day, the district court ordered appellant to be incarcerated in the county jail for up to 180 days due to his failure to comply with the contempt order. The district court included a purge clause in the order, which provided that appellant would be released from jail if he did any of the following: (1) fully responded to respondent's discovery requests; (2) posted a supersedeas bond in the amount of 120% of the original judgment amount; (3) posted a cashier's check payable to the court administrator in the amount of 120% of the original judgment amount; or (4) fully satisfied the judgment. We conclude that the contempt

15

proceedings in this case complied with the requirements set forth in *Mower Cty.* and that the district court did not abuse its discretion by imposing contempt sanctions on appellant.

**Appellant has not shown that the district court judge had a personal interest or was biased.**

Appellant argues that the district court judge who filed the October 21, 2015 contempt order "had a personal interest and was bias[ed]." In support of these allegations, appellant refers to an affidavit he submitted along with his appellate brief. A portion of this affidavit was filed in district court on September 21, 2015. The district court treated that portion as a notice to remove the district court judge and denied the request. The new portion of the affidavit, having never been submitted to the district court, is not part of the record on appeal and is not properly before this court. *See* Minn. R. Civ. App. P. 110.01 ("The documents filed in the [district] court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." (quotation omitted)).

"No judge shall sit in any case if that judge is interested in its determination or if that judge might be excluded for bias from acting therein as a juror." Minn. R. Civ. P. 63.02. "Bias or prejudice, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his

participation in the case." *In re Estate of Lange*, 398 N.W.2d 569, 573 (Minn. App. 1986).

Nothing in the record indicates the presence of extrajudicial bias or prejudice in this case.

**Affirmed.**